**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Thomas W. GRAHAM, Appellant.**

Superior Court of Pennsylvania.

Argued March 20, 2008.
Filed May 13, 2008.

Kenneth R. Harris, Jr., Butler, for appellant.

Richard A. Goldinger, Asst. Dist. Atty., Butler, for the Com., appellee.

BEFORE: BENDER, BOWES and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Thomas W. Graham appeals the November 7, 2005, aggregate judgment of sentence of four to eight years imprisonment, restitution, costs and fees imposed after a jury convicted him of one count each of arson,[1] burglary,[2] criminal trespass,[3] criminal mischief,[4] theft by unlawful taking,[5] and receiving stolen property.[6] The charges arose after it was alleged appellant had burned down a home under construction and nearing completion. Following a subsequent hearing, an amended Order of restitution was entered on March 9, 2006, directing appellant to pay restitution totaling $374,437.37. Post-trial motions were denied by operation of law on July 7, 2006, and a timely notice of appeal was filed August 4, 2006. Appellant was ordered to file a concise statement of matters complained of on appeal and, following several extensions, a timely statement was filed on December 22, 2006.

¶ 2 Graham first argues the trial court erred by denying his motion to suppress evidence obtained from a warrantless search of his vehicle, as well as a subsequent search of this same vehicle with a warrant. The search was conducted at appellant's residence, with the apparent third-party consent of appellant's roommate, Dave Gruseck, who told the officer, Sergeant Randy Reudiger, that the car in question belonged to him, appellant having given it to him as payment for a debt. With the consent of Gruseck, the Sergeant looked through the car windows, opened the car door, looked in the car, and took photographs of items seen in plain view, those items ultimately identified as those stolen from the burglarized and destroyed residence. Appellant contends the initial warrantless search was illegal, and the items seized as a result of the subsequent search, conducted with a warrant, were fruit of the poisonous tree and should have been suppressed.

¶ 3 In considering appellant's argument, we are guided by the following standards.

The standard and scope of review for a challenge to the denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing rulings of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record

---

1. 18 Pa.C.S.A. § 3301(c)(i).

2. *Id.* § 3502(a)(1).

3. *Id.* § 3503(a)(i)(ii).

4. *Id.* § 3304(a)(2).

5. *Id.* § 3921(a).

6. *Id.* § 3925(a).

supports findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Hughes,* 575 Pa. 447, 456–457, 836 A.2d 893, 898 (2003) (citations and quotations omitted). While warrantless searches and seizures are considered to be unreasonable and therefore prohibited absent few exceptions, both state and federal constitutions allow third party consent to search, and "[w]hen police officers obtain the voluntary consent of a third party who has the authority to give consent, they are not required to obtain a search warrant based upon probable cause." *Id.* at 459, 836 A.2d at 900. "[W]arrantless searches based upon the reasonable belief of a police officer that the third party who has given consent to the officers to search has actual authority, will be upheld as reasonable even though that belief was mistaken." *Id.* at 459, 836 A.2d at 898. · This is the "apparent authority" exception to the exclusionary rule. *Id.*

A third party with apparent authority over the area to be searched may provide police with consent to search. Third party consent is valid when police reasonably believe a third party has authority to consent. Specifically, the apparent authority exception turns on whether the facts available to police at the moment would lead a person of reasonable caution to believe the consenting third party had authority over the premises. If the person asserting the authority to consent did not have such authority, that mistake is constitutionally excusable if police reasonably believed the consenter had such authority and police acted on facts leading sensibly to their conclusions of probability.

*Commonwealth v. Strader,* 593 Pa. 421, 427, 931 A.2d 630, 634 (2007) (citations and quotations omitted), *cert. denied* —— U.S.

——, 128 S.Ct. 1452, 170 L.Ed.2d 281, 2008 U.S. Lexis 2181 (U.S. February 25, 2008). "The reasonable mistake of the police officer must be judged from an objective standard based upon the totality of the circumstances." *Hughes, supra* at 465, 836 A.2d at 903 (citations omitted).

¶ 4 In its findings of fact and conclusions of law written in support of its decision to deny appellant's motion to suppress, the court found as follows:

Sergeant Randy Ruediger testified that he questioned Dave Gruseck about the 1992 Chevrolet Blazer. Gruseck stated that he was the owner of the automobile. Gruseck stated that his roommate, Defendant Graham, had given it to him as repayment for a loan he had made to the Defendant. We conclude that based on the representation by Gruseck, the Sergeant acted reasonably in seeking consent to search the automobile from Gruseck.

Suppression Court Opinion, Hancher, J., 6/2/05, at 8. Our review of the February 15, 2005, suppression hearing transcript supports this finding.

¶ 5 Sergeant Ruediger testified that on the morning of March 11, 2004, he and his partner traveled to the home rented by appellant and his roommate, Dave Gruseck, for the purpose of speaking with appellant. N.T., 2/15/05, at 12–13. When they arrived, Gruseck was in the driveway, and told the officers appellant was not home. Sergeant Ruediger also told Gruseck he was interested in the Chevy Blazer parked in the driveway, and asked Gruseck, "what he knew about that vehicle." *Id.* at 14. Gruseck told Sergeant Ruediger the Blazer belonged to him, that appellant had given it to him as payment for a debt owed. *Id.* at 14–15.

Q: And did Mr. Gruseck indicate to you he owned the vehicle?

A: At that time, yes.

. . .

A: Mr. Gruseck indicated [a] trade was made and Mr. Graham had given him that vehicle for spare parts on a vehicle he was working on very similar to[, and] he advised he was the owner of the vehicle.

*Id.* at 15, 24. At the time Gruseck gave him permission to look through the Blazer, Sergeant Ruediger "was under the impression … that the trade had been made and that Dave Gruseck was the owner of the vehicle[.]" *Id.* at 32. While a subsequent vehicle identification check revealed, contrary to Gruseck's averment, that title to the Blazer remained with appellant at that point in time, Sergeant Ruediger relied on the statement of Gruseck claiming ownership, walked around the vehicle, and was able to see inside "some construction type materials and some tools of such." *Id.* at 15, 23–24, 27–28. The items were in plain view despite tinted windows. On a hunch the items might be evidence, Sergeant Ruediger chose to not wait until he received a search warrant, but rather asked and received permission from Gruseck to open the car doors and look inside. *Id.* at 16, 36. Sergeant Ruediger took pictures of items in the car for the purpose of showing them to the victim/homeowners, John and Sylvia Prato, for possible identification of items stolen from their house. Because the victims did positively identify some of the items as belonging to them, Sergeant Ruediger obtained a search warrant that same day, April 7, 2004. *Id.* at 21. Sergeant Ruediger testified he served appellant with the warrant, as the titled owner of the vehicle, the car was towed to police barracks that day, and, on April 17, 2004, it was searched. *Id.* at 22, 29.

¶ 6 While perhaps it would have been more prudent of Sergeant Ruediger to wait until he absolutely verified ownership of the Blazer and secured a search warrant before opening the door to the vehicle, based on Gruseck's claim he owned the car, the officer *reasonably* concluded that roommate Gruseck had, at a minimum, apparent authority to give consent for the search of, and intrusion into, the Chevy Blazer. *See Strader, supra.* For this reason, we find the subsequently seized items were not "fruit of the poisonous tree," and therefore were properly not suppressed. The suppression court did not err.

■ ¶ 7 Appellant next argues the court erred by grading the burglary charge as a felony of the first degree because the structure at issue was not "occupied," as required by statute; that is to say, appellant contends the structure was not adapted for overnight accommodation at the time of the burglary. Appellant's brief at 14.

There is no question that the structure was not inhabitable at the time of the crime, therefore the question for this court is whether a structure that is in the process of construction, such that there are no fixtures, outlets, furnishings, flooring, or lighting, qualifies as a structure adapted for over night accommodation. Simply put, when does a house become a home?

*Id.* at 15.

¶ 8 The statute in question follows:

§ 3502 **Burglary**

(a) **Offense defined.**—A person is guilty of burglary if he enters a building or *occupied structure,* or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter.

(b) **Defense.**—It is a defense to prosecution for burglary that the building or structure was abandoned.

(c) **Grading.**—

(1) Except as provided in paragraph (2), burglary is a felony of the first degree.

(2) If the building, structure or portion entered is not adapted for overnight accommodation and if no individual is present at the time of entry, burglary is a felony of the second degree.

. . .

18 Pa.C.S.A. § 3502 (emphasis added). An occupied structure is defined as "[a]ny structure, vehicle or place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present." 18 Pa. C.S.A. § 3501, **Definitions.** "[T]he focus of the determination of whether a structure is adapted for overnight accommodation should be the nature of the structure itself and its intended use, and not whether the structure is in fact inhabited." *Commonwealth v. Nixon,* 801 A.2d 1241, 1247 (Pa.Super.2002).

¶ 9 At trial, the victim's husband, John Prato, a union carpenter who was building his new home with the help of subcontractors, testified, with the aid of pictures, that at the time of the burglary and fire, the insulation was practically completed and the drywall was ready to be installed. N.T., 6/27/05, 78–82. The house was wired for electricity, inspected, and two circuits were hot for construction purposes and to provide power for the lighting that was on a timer. *Id.* at 87–88, 128. The plumbing was completed, but the custom-made kitchen cabinets and some fixtures and appliances,[7] which already had been purchased and were stored in the cellar, were not attached. *Id.* at 87–88, 92–93. Kerosene heaters and an oil furnace provided heat when needed, but no propane was on-site

to fuel the permanent furnace already installed. *Id.* at 95–98. According to the victim's testimony, an outdoor wood burner and air conditioning unit had been installed. *Id.* at 102, 105. Prato also testified that at the time of the fire, the house had running water, and all windows and doors of the home had been installed, as were the locks. *Id.* at 122, 140.

¶ 10 Admittedly, the house at the time of the fire did not have the amenities typically available when a family moves into the home they have constructed. That does not, however, for our purposes, lead to the inescapable conclusion that the house was not "adapted for overnight accommodation." Despite the fact no final furnishings were in place and no one yet lived there, we agree the evidence of record supports the finding of the jury that appellant was guilty of burglary as a first degree felony, the structure burglarized being "adapted for overnight accommodation." Based on Prato's testimony, we find it reasonable for the fact finder to have concluded the house was habitable, equipped with heat, light, and water, albeit rustic by modern standards. In making this decision, we are guided by this Court's reasoning in *Nixon, supra,* which advises that our primary consideration should be the nature of the structure of itself.

¶ 11 Appellant next argues that amounts awarded to State Farm Insurance as a result of the March 9, 2006, amended restitution Order were excessive. Appellant's brief at 17. The amounts in question were $345,104.50 and $29,332.87. Appellant bases his argument on the February 3, 2006, restitution hearing testimony of State Farm representative, Robert Wright, who testified that as of the No-

---

7. The following fixtures and appliances had been purchased for the home and were stored in the basement: pedestal sink, two refrigerators, dish washer, double oven, cook-top, microwave and oven hood. N.T., 6/27/05, at 89–91.

vember 4, 2003, loss, the policy's building coverage limits were $265,465.00. *Id.*; N.T., 2/3/06, at 5. Appellant contends the coverage should be limited to the $265,465.00, because no appraisal on the structure was performed, and "[i]t is clear from the record that the built in increase to the policy was not necessary as the value had remained $265,000.00." Appellant's brief at 17–18. Appellant argues he should not be held responsible for State Farm's decision to "pay out the maximum amount allowed, whether or not the same was justified based on the loss." *Id.* at 18.

¶ 12 A review of Wright's testimony in its entirety, however, supports the award(s) of restitution. *See Commonwealth v. Opperman*, 780 A.2d 714 (Pa.Super.2001), *appeal denied* 568 Pa. 617, 792 A.2d 1253 (2001) (holding an order of restitution must be supported by the record). Wright testified that Prato's policy provided for building coverage of $265,465.00, plus an additional 25% should the home need to be replaced in its entirety, plus additional coverage for landscaping and personalty. N.T. at 5–6. Accordingly, State Farm sought the following restitution: $265,465.00, plus 25% replacement cost ($66,366.25), as the home clearly was destroyed, plus $13,273.25 landscaping, for a total of $345,104.50 for the house loss, plus $29,332.87 for personalty. Wright testified that he estimated the damages to the structure "by using architectural drawings provided by the insured[,]" and noted that the policy limits had been renewed as recently as September 3, 2003, two months before the fire. *Id.* at 9–10. In evaluating the damages, Wright testified he was assisted by the insurer's "large loss tea m ... consisting of two estimators and a contents processor." *Id.* at 14. When asked what percentage of construction was completed at the time of the loss, Wright opined 90%. *Id.* at 16.

¶ 13 We find no basis upon which to alter the award(s) of restitution. Appellant's argument that State Farm, rather than he, should bear the monetary consequences of the insurer paying the policy limits, as it contractually was obliged to do, is absurd.

¶ 14 Finally, appellant argues trial counsel was ineffective for failing to request a jury instruction relative to alibi defense. Appellant's brief at 18. Appellant concedes that the issue is premature and should be raised in a Post Conviction Collateral Relief petition, but relies, curiously, on *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), for the proposition, "it is appropriate to include counsel's argument, and allow this court to reach its own decision." Appellant's brief at 19. We find no merit to appellant's bald argument and therefore find the issue is not now properly before this Court. *See Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002).

¶ 15 Having found each of appellant's arguments devoid of merit, we affirm the November 7, 2005, judgment of sentence, including the March 9, 2006, amended Order of restitution.

¶ 16 Judgment of sentence affirmed.

¶ 17 BENDER, J., files a Concurring Opinion.

CONCURRING OPINION BY BENDER, J.:

¶ 1 I agree with the majority's conclusion that *Commonwealth v. Nixon*, 801 A.2d 1241 (Pa.Super.2002), leaves this court no option but to rule that the burglary be graded as a felony of the first degree rather than a felony of the second degree. However, I feel compelled to note my disagreement with that conclusion. It is clear the building was not occupied. While the building was being adapted for over-

night accommodation it had not been so adapted at the time of the burglary. It was in the process of construction. No one was living there. The statutory distinction is intended to more severely punish a burglary which involves an occupied structure or one that could be occupied. The reason for the increased punishment is that burglary of occupied structures increases the risk of injury or death to persons involved. The structure in the instant case was a home under construction. I see no reason to torture the plain meaning of the statute in such a manner simply to sentence the defendant to a term of imprisonment as a felony of the first degree rather than as a felony of the second degree. The punishment permitted as a felony of the second degree is sufficient.