9 A.3d 196

COMMONWEALTH of Pennsylvania, Appellee

v.

Thomas W. GRAHAM, Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 15, 2009.

Decided Dec. 21, 2010.

Kenneth Richard Harris, Jr., for Thomas W. Graham.

Timothy F. McCune, Butler, Richard Aaron Goldinger, District Attorney, for Commonwealth of Pennsylvania.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## OPINION

Justice SAYLOR.[1]

Resolution of this appeal centers on the appropriate understanding, for purposes of burglary gradation, of when a structure is adapted for overnight accommodation.

In June 2005, Appellant was convicted of burglary and related offenses, resulting from a criminal episode in which he and an accomplice unlawfully entered a house under construction and removed appliances and tools. After the items were taken, Appellant destroyed the building by setting it on fire, for which he also was convicted of arson and a related offense.

Under the Crimes Code, a burglary is generally a felony of the first degree. *See* 18 Pa.C.S. § 3502(c)(1). If, however, the building, structure, or portion entered is not adapted for overnight accommodation, and no individual is present at the time of entry, burglary is a felony of the second degree. *See* *id.* § 3502(c)(2). Here, it is undisputed that no person (other than Appellant and his accomplice) was present at the time of Appellant's crimes. Hence, the appropriate grading depended on whether the home under construction may be regarded as a "structure ... adapted for overnight accommodation." *Id.*

At Appellant's trial, the owner of the burglarized structure provided uncontradicted testimony that, immediately before the burglary and fire, the exterior work on the building was complete; windows and doors were installed, albeit lacking trim; concrete was poured; electrical and plumbing rough-in work had been accomplished; temporary heat was available for construction purposes; and running water was available via two spigots, one located on the building's exterior and the other in the garage. On the other hand, the owner stated that: only two electrical circuits were active for construction purposes; plumbing was stub, with no fixtures in place and only an unattached pedestal sink on premises; walls were framed, but the framing remained open and uncovered; drywall was on premises but uninstalled; lighting was limited to construction and security purposes; the permanent furnace

1. This matter was reassigned to this author.

was in place but not operational; kitchen appliances and cabinets remained packed and stored in the basement; and there was no running water in the planned living space.

The owner-victim's testimony culminated in the following interchange on cross-examination, encapsulating the progress of the construction:

Q: [Is it] [f]air to say that you didn't get the house to the point where you could live in it yet, correct?

A: That's fair to say, yes.

N.T., June 27, 2005, at 142.

The jury returned verdicts of guilt on counts of burglary and related offenses. Concerning the burglary conviction, the verdict was a general one, with no special findings. As to arson, Appellant was acquitted of the greater offense of arson endangering persons, which encompasses intentionally starting a fire with the purpose of destroying or damaging an inhabited building or occupied structure of another.[2] *See* 18 Pa.C.S. § 3301(a)(1)(ii). The verdict of guilt attached to a distinct count for "Arson endangering property," which encompasses intentionally starting a fire with the intent of destroying or damaging a building or unoccupied structure of another. *See id.* § 3301(c)(1).

From the time of the verdicts, the trial court consistently couched the burglary conviction as a first-degree felony. *See, e.g.*, N.T., June 29, 2005, at 241. In a later opinion, the court explained that, "[t]he Burglary was graded as a first degree felony based upon a jury finding that the loss exceeded $25,000." *Commonwealth v. Graham*, C.A. # 1947/04, *op.* at —— (C.P. Butler, Mar. 9, 2006).[3] Appellant's ultimate sen-

2. As further discussed below, the definition of "occupied structure" provided in the arson statute centers, in relevant part, on adaptation for overnight accommodation. *See* 18 Pa.C.S. § 3301(j) (defining "occupied structure" as "[a]ny structure, vehicle or place adapted for overnight accommodation of persons or for carrying on business therein, whether or not a person is actually present."). The chapter of the Crimes Code pertaining to burglary contains a materially identical definition. *See* 18 Pa.C.S. § 3501.

3. This discussion was provided in connection with a post-sentence amendment to the restitutionary portion of Appellant's sentence and

584

tence for burglary also reflected the first-degree felony status. Post-sentence motions were denied by operation of law on account of the trial court's failure to comply with its obligation to decide them within 120 days. *See* Pa.R.Crim.P. 720(B)(3).

On appeal, the Superior Court affirmed the judgments of sentence over Appellant's challenges, including one directed to the appropriate grading of the burglary conviction. *See Commonwealth v. Graham*, 949 A.2d 939 (Pa.Super.2008). Based on the owner-victim's testimony, the majority found the evidence sufficient to support a conclusion that the burglarized structure was adapted for overnight accommodation, since "the house was habitable, equipped with heat, light, and water, albeit rustic by modern standards." *Id.* at 944. The majority also referenced the reasoning from *Commonwealth v. Nixon*, 801 A.2d 1241 (Pa.Super.2002) (holding that a completed and furnished row house under renovation, with water and electricity services suspended, was adapted for overnight accommodation), as supportive. In particular, the majority emphasized *Nixon's* directive that "the focus of the determination of whether a structure is adapted for overnight accommodation should be the nature of the structure itself and its intended use, and not whether the structure is in fact inhabited." *Graham*, 949 A.2d at 944 (quoting *Nixon*, 801 A.2d at 1247).

Judge Bender concurred based on precedent, but provided his independent merits assessment, as follows:

incorporated into the trial court's opinion under Rule of Appellate Procedure 1925(a). *See Commonwealth v. Graham*, C.A. # 1947/04, *op.* at —— (C.P. Butler, Jan. 16, 2007).

The trial court's explanation is confusing, because the statutory divide between burglary as a felony of the first degree and as one of the second turns on the presence of another or the character of the structure as one adapted for overnight accommodation, *see* 18 Pa.C.S. § 3502(c)(2), not on the monetary value of the loss. Moreover, the only monetary findings by the jury, as reflected on the verdict slip, were that *the value of the pecuniary loss incurred (as it pertained to a criminal mischief count)* or property involved (for theft-by-unlawful-taking and receiving-stolen-property counts) exceeded $5,000 and $2,000, respectively.

Thus, the source of, and legal significance attaching to, the $25,000 figure indicated by the trial court is unknown.

It is clear the building was not occupied. While the building was being adapted for overnight accommodation it had not been so adapted at the time of the burglary. It was in the process of construction. No one was living there. The statutory distinction is intended to more severely punish a burglary which involves an occupied structure or one that could be occupied. The reason for the increased punishment is that burglary of occupied structures increases the risk of injury or death to persons involved. The structure in the instant case was a home under construction. I see no reason to torture the plain meaning of the statute in such a manner simply to sentence the defendant to a term of imprisonment as a felony of the first degree rather than as a felony of the second degree. The punishment permitted as a felony of the second degree is sufficient.

*Graham,* 949 A.2d at 945–46 (Bender, J., concurring).

 This Court subsequently allowed appeal limited to the burglary gradation issue. As this question entails both statutory construction (in terms of the scope of the legislative conception of adaptation for overnight accommodation) and evidentiary sufficiency, our review is plenary. *See Spahn v. ZBA,* 602 Pa. 83, 100, 977 A.2d 1132, 1142 (2009) (statutory construction); *Commonwealth v. Meals,* 590 Pa. 110, 119, 912 A.2d 213, 218 (2006) (evidentiary sufficiency). In terms of statutory construction, given the plethora of circumstances in which the concept of adaptation may apply, we deem its use by the Legislature to be sufficiently unclear so as to permit reference to tools of statutory construction, including consideration of the occasion and necessity for the statute, the object to be attained, and the consequences of a particular interpretation. *See DPW v. W.C.A.B. (Harvey),* 605 Pa. 636, 653, 993 A.2d 270, 281 (2010) (citing 1 Pa.C.S. § 1921(c)). In the sufficiency review, the evidence is to be considered in the light most favorable to the Commonwealth, as the verdict winner. *See Meals,* 590 Pa. at 119, 912 A.2d at 218.

Presently, Appellant's arguments are consistent with Judge Bender's position on the merits. *See, e.g.,* Brief for Appellant at 8 ("At the time of the burglary, the structure had only been

framed in. The victims had yet to install; fixtures, outlets, furnishings, flooring, and lighting."). Further, Appellant distinguishes *Nixon* as involving a completed structure, in which the utility services only had been suspended. Here, by contrast, Appellant describes the structure as "merely a project under construction." *Id.* at 9. Appellant also advances the policy position set out by Judge Bender. *See id.* ("The increased grading is based on the concern that those who burglarize structures that are adapted for overnight accommodation do so with a greater disregard for the risk of death or injury."). Additionally, he criticizes *Nixon's* focus on the nature of the structure and its intended use as overly broad and out of sync with the legislative intent.

Appellant also gleans support for his position from the following passage from *Commonwealth v. Majeed,* 548 Pa. 48, 694 A.2d 336 (1997):

> The historical principle underlying the law of burglary is the protection of the right of *habitation.* 4 William Blackstone, Commentaries 223. Today, although the Pennsylvania burglary statute applies broadly to any building or occupied structure, not just dwelling places, the focus remains the protection of occupancy or possession, not merely ownership.

*Id.* at 53 n. 2, 694 A.2d at 338 n. 2 (emphasis in original). Furthermore, he highlights that the jury, when faced with the option of convicting Appellant with arson of an occupied versus an unoccupied structure, chose the latter course. Thus, directly opposite the Superior Court's perspective, Appellant believes the jurors actually and affirmatively determined that the burglarized structure was *not* adapted for overnight accommodation.[4]

The Commonwealth, on the other hand, couches the structure at issue as a nearly completed house with all basic necessities present and asserts it "was capable of, and thus adapted for overnight accommodation." Brief for Appellee at

---

4. Appellant's argument, in this regard, is predicated on the arson statute's centering of the statutory definition of "occupied structure" on adaptation for overnight accommodation. *See supra* note 2.

7; *see also id.* at 12. The Commonwealth places much emphasis on the fact that the relevant definition of "occupied structure" subsumes "[a]ny ... structure *adapted for overnight accommodation." Id.* at 10 (quoting 18 Pa.C.S. § 3501) (emphasis in original). According to the Commonwealth, this unqualified approach demonstrates the Legislature's adoption of a very broad construction of the term "occupied structure." [5]

The Commonwealth also asserts that its conclusion that the relevant structure was adapted for overnight accommodation is bolstered by Appellant's "admission" that "[t]here is no question that the structure *was not inhabitable at the time of the crime." Id.* at 12 (quoting Brief for Appellant at 8) (emphasis in original).[6] Further, it advances a policy rationale focusing on a concern for human safety, citing *Commonwealth v. Hagan,* 539 Pa. 609, 654 A.2d 541 (1995). The Commonwealth adds that vindication of Appellant's position would lead to absurd results, since, had the owner-victim been present at the time of Appellant's offense, the structure nevertheless would not be considered an "occupied structure." [7] According to the Commonwealth, the crime would thus be graded as a burglary of the second degree, contrary to the common law rationale for burglary and the consistent legislative intent. *See* Brief for Appellee at 16–17. Moreover, the Commonwealth contends that, under Appellant's interpretation, "all nearly completed houses in construction plans across this Commonwealth, completed houses awaiting sale in housing

5. As further discussed below, the Commonwealth advances this argument without addressing that neither the term "occupied structure," nor the word "any," appears in the grading provisions of the central burglary statute, 18 Pa.C.S. § 3502(c).

6. In this regard, the Commonwealth appears to be reading the word "inhabitable," as used in Appellant's brief, as "uninhabitable."

7. Curiously, however, the Commonwealth otherwise recognizes that the General Assembly "explicitly removed the issue of 'presence,' since the definition [of 'occupied structure'] ends with the phrase 'whether or not a person is actually present.' " Brief for Appellee at 19 (quoting 18 Pa.C.S. § 3501). In this regard, within the main body of the burglary statute, actual presence of an individual at the time of the unlawful entry serves as an independent disqualifier foreclosing the more lenient second-degree felony treatment. *See* 18 Pa.C.S. § 3502(c)(2).

communities, and various types of rental and investment property would not be considered an 'occupied structure,'" again, thwarting legislative intent. *Id.* at 17.

The Commonwealth also defends the *Nixon* decision, explaining that the Superior Court there recognized that there was not a "test or a list of factors to be considered in determining whether a structure is adapted for overnight accommodation." *Nixon,* 801 A.2d at 1244. Rather, the *Nixon* court applied a fact-specific approach consistent with the following discussion set out in *Blankenship v. State,* 780 S.W.2d 198 (Tex.Crim.App.1989) (*en banc*):

> What makes a structure "suitable" or "not suitable" for overnight accommodation is a complex, subjective factual question fit for a jury's determination. Their inquiry could be guided by reference to whether someone was using the structure or vehicle as a residence at the time of the offense; whether the structure or vehicle contained bedding, furniture, utilities, or other belongings common to a residential structure; and whether the structure is of such a character that it was probably intended to accommodate persons overnight (e.g. house, apartment, condominium, sleeping car, mobile home, house trailer). All of these factors are relevant; none are essential or necessarily dispositive.

*Id.* at 209. Consistent with *Nixon,* the Commonwealth seeks an approach focusing on the nature of the structure and its intended use, thus enabling a court to assess situations where the potential for violent confrontation is present. *See* Brief for Appellee at 19.

Upon our review, we are in material agreement with Judge Bender's merits analysis and Appellant's core position. As developed below, the multiple difficulties with the analyses by the trial court, the Superior Court majority, and the Commonwealth illustrate the weaknesses in their finding of adaptation.

First, as previously noted, in its opinion under Rule of Appellate Procedure 1925(a), as support for the first-degree felony gradation, the trial court inexplicably relied upon a

monetary litmus unconnected to the governing adaptation assessment. *See supra* note 3.

For its part, the Superior Court majority incorrectly indicated that the jury made the necessary finding that the structure in question was adapted for overnight accommodation. In point of fact, the record reflects no such finding. In relevant part, the jury charge permitted a verdict of guilt on the burglary charge so long as the jury found the structure in question to be *either* a "building," *or* an "occupied structure." *See* N.T. June 29, 2005, at 201. Thus, the verdict could have been based on a conclusion that the burglarized structure was a "building," but not an occupied structure.[8] Indeed, as Appellant argues, if anything can be gleaned from the general verdicts in this case, the more justifiable inference is that the jury regarded the burglarized structure as a building or unoccupied structure.[9] In this regard, as noted, the jury returned an acquittal relative to the arson count centered on

---

**8.** Although the trial court did not define the term "building" for the jury, common dictionary definitions of the term include structures under construction. *See, e.g.,* RANDOM HOUSE DICTIONARY 274 (2d ed.1987) (recognizing that the term "building," in common parlance, may be used to subsume "either a finished or unfinished product of construction"), *quoted in Moye v. State,* 991 A.2d 18 (Del.Super.2010).

**9.** The dissent claims "the jury could not reasonably find there was arson of an occupied structure, since no one was there." Dissenting Opinion, at 596, 9 A.3d at 205–06. This line of reasoning, however, overlooks the material definition of "occupied structure," which—as we have discussed—simply does not require a person's actual presence. *See, e.g., supra* note 2 (citing 18 Pa.C.S. § 3301(j)). Rather—as also explained above—the definition hinges on the same concept that is central to the burglary grading determination, *i.e.,* adaptation for overnight accommodation. *See id.* In the present case, the jury was so charged, as follows:

> The term occupied structure has a broad meaning. It refers to any structure or place adapted for overnight accommodation of persons *whether or not a person is actually present.* The focus of the determination of whether a structure is adapted for overnight accommodation should be the nature of the structure itself and its intended use and *not whether the structure is in fact inhabited at the time of the fire.*

N.T., June 29, 2005, at 200–01 (jury charge) (emphasis added).

Thus, to the degree the jurors followed this charge, by returning a verdict of guilt for arson endangering property, but an acquittal relative to the burning of an occupied structure, they found the subject property was not adapted for overnight accommodation.

the burning of an inhabited building or occupied structure and a verdict of guilt relative to the count centered on the burning of a building or unoccupied structure.[10]

As Appellant alluded in his post-verdict motions, the absence of a jury finding concerning the litmus between burglary as a first- or second-degree felony may raise constitutional concerns under *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435, (2000) (holding, with limited exception, that judicial findings which result in punishment beyond statutory maximums must be submitted to a jury and proven beyond a reasonable doubt).[11] Moreover, under the majority decision in *Commonwealth v. Aponte*, 579 Pa. 246, 855 A.2d 800 (2004), *Apprendi* challenges implicate sentencing legality and are therefore unwaivable. *See id.* at 250 n. 1, 855 A.2d at 802 n. 1. Thus, the appropriate recognition that the jury made no finding that the subject structure was adapted for overnight accommodation could raise serious, reviewable questions concerning the legality of the sentence imposed.[12]

In terms of the Commonwealth's arguments, initially, its equation of "capability" of overnight accommodation with actual "adaptation" is untenable. First off, the adaptation condition in the grading provision of the burglary statute is

10. *Compare* 18 Pa.C.S. § 3301(a)(1)(ii) (arson endangering persons predicated on commission of the act with the "purpose of destroying or damaging an inhabited building or *occupied* structure of another" (emphasis added)), *with id.* § 3301(c)(i) (arson endangering property grounded on commission of the act with the "intent of destroying or damaging a building or *unoccupied* structure of another" (emphasis added)).

11. There is a ten-year difference between the maximum term of incarceration generally available as between first- and second-degree felonies. *See* 18 Pa.C.S. § 1103. Thus, the distinction can be quite significant for *Apprendi* purposes.

12. Nevertheless, in light of our disposition of the question on which allocatur was granted and the present lack of specific briefing on the *Apprendi* matter, we decline to address such questions further in this opinion. Moreover, the actual maximum term of incarceration for burglary reflected in Appellant's judgment of sentence (five years) was well below the statutory maximum for both first- and second-degree felonies. *See* 18 Pa.C.S. § 1103.

phrased in the present tense, turning on whether or not the structure "is" adapted. 18 Pa.C.S. § 3502(c)(2). Thus, for the first-degree felony grading to apply, the structure must already be adapted for such accommodation—it is not sufficient that it may become so in the future.[13] Moreover, under a broad construction of "capability," any structure of sufficient size (including a personal storage shed or an automobile) is "capable" of overnight accommodation. Since, however, the Legislature used the term "adapted for overnight accommodation" as a limiting principle, capability and actual adaptation must be accorded distinct meanings.

The Commonwealth's reliance on the Legislature's use of the term "any" as requiring a broad construction of "occupied structure" is misplaced, since neither term appears in the grading provisions of the burglary statute. *See supra* note 5. Moreover, the General Assembly's designation of an entire category as a litmus offers little guidance concerning where the boundaries of the specified categorization lie. Such limits must be determined, in the present case, through a straightforward, and reasonably restrained, application of the concept of adaptation. *See supra* note 13.

The *Hagan* decision, relied upon by the Commonwealth, affords very modest support for its arguments, since it does not address adaptation. Rather, *Hagan* concerned whether a fenced and secured storage lot was an "occupied structure" under the distinct proviso that such term encompasses structures, vehicles, or places for carrying on business therein. *See Hagan*, 539 Pa. at 614–15, 654 A.2d at 544.

■ The Commonwealth's assertion that all basic necessities were present in the subject structure is an oversimplification. For example, running water was available in the planned living space solely via attachment of a garden hose to

13. *See* 18 Pa.C.S. § 105 (mandating that the provisions of the Crimes Code be "construed according to the fair import of their terms"); *see also* 1 Pa.C.S. § 1928(b)(1) (requiring strict construction of penal statutes); *Commonwealth v. Booth*, 564 Pa. 228, 234, 766 A.2d 843, 846 (2001) (noting that, under the rule of lenity, any doubt about a statute's meaning is resolved in favor of the accused).

spigots in the garage or on the exterior; no toilet facilities were present; and there were no furnishings available for sleeping. According to the owner-victim's uncontradicted testimony, all working utility services were configured for construction purposes only. Such understanding substantially qualifies the presence of "basic necessities" as it relates to actual adaptation.[14]

Next, the Commonwealth's discernment of an "admission" by Appellant reflects an obvious misreading of his brief. *See supra* note 6.

The Commonwealth's next argument questions the rationality of a definition of occupied structure so narrow that it would exclude buildings in which a person actually is present. This position, however, is inconsistent with the Commonwealth's own recognition, in distinct passages of its brief, that the statutory definition of an "occupied structure" explicitly disregards the presence or non-presence of individuals, but rather, focuses on the character of the structure. *See supra* note 7. Relatedly, the Commonwealth incorrectly indicates that burglary of a structure in which an individual is present would be graded as a second-degree burglary unless the definition of "occupied structure" is extended to buildings in which persons are physically present. *See* Brief for Appellee at 16–17. In fact, separate and apart from the "occupied structure" terminology, the burglary statute provides for first-degree felony grading for structures in which a victim is actually present. *See* 18 Pa.C.S. § 3502(c)(2) (requiring, as prerequisites to downgrading burglary from a first-degree felony, that "the building ... is not adapted for overnight accommodation *and* ... *no individual is present at the time of entry* " (emphasis added)). Thus, the General Assembly clearly recognized and

---

14. The dissenting position gains its most force through its generalizations. *See, e.g.,* Dissenting Opinion, at 597 n. 1, 9 A.3d at 206 n. 1 (describing the subject structure as "a fully-enclosed building with water, heat, and electricity" and as having "utilities").

In our view, and as reflected above, this case turns on the progress of the intended adaptation. In this regard, we find it appropriate to maintain a closer focus on the then-present state of the living quarters, including the configuration of utilities for construction purposes.

accounted for the greater propensity for harm in actual-presence scenarios.

The Commonwealth's position that a finding that the subject structure was not yet adapted for overnight accommodation would mean that no building not presently in use could be deemed to be so adapted employs the *reductio ad absurdum* fallacy. As other courts have recognized, the adaptation inquiry is fact intensive, and material differences will arise depending on the form and degree of adaptation intended and accomplished. In particular, there are pertinent differences between structures which have been fully adapted for overnight accommodation, but which temporarily lack services or other features of full adaptation, and those which have never been so adapted, albeit work may be underway in furtherance of such objective.

All of these difficulties encountered by the trial court, the Superior Court majority, and the Commonwealth in defending the first-degree grading of Appellant's burglary conviction point up the straightforward conclusion (consistent with the jury's decision-making in the arson context) that it simply is not appropriate. Here, there is no dispute that the subject building was a project under construction, unfinished, unfurnished, and uninhabitable, except on terms very different from the planned adaptation. This state of affairs is candidly reflected in the owner-victim's testimony, which bears repeating:

Q: [Is it] [f]air to say that you didn't get the house to the point where you could live in it yet, correct?

A: That's fair to say, yes.

N.T., June 27, 2005, at 142.

In terms of the policy rationale presented by the Commonwealth, as Judge Bender recognized, burglary is subject to substantial penalties, whether it is graded as a first- or second-degree felony, and the Legislature has drawn a clear line between the two scenarios grounded on the adaptation concept. Since a violent confrontation is possible in non-adapted buildings and structures, it follows that not all burgla-

ry scenarios in which violent confrontation is a possibility are amenable to first-degree grading. Rather, and again, the statute makes it clear that a meaningful divide between first- and second-degree offenses is to be maintained in non-business contexts, grounded on adaptation (or, in cases of non-adaptation, actual presence of an individual).

We have no difficulty with the *Nixon* court's explanation that the primary focus, in assessing adaptation, should be the nature of the structure and its intended use, as distinguished from present use for inhabitation. *See Nixon,* 801 A.2d at 1247. We believe, however, that the "nature" criterion is broad enough to subsume consideration of the progress of a planned adaptation in construction scenarios. Indeed, as recognized by the Texas court in *Blankenship,* there are a multitude of sub-factors which may be considered. *See Blankenship,* 780 S.W.2d at 209.

Finally, the *Nixon* holding—that a previously completed row house under renovation, with electric and water services suspended, was adapted for overnight accommodation—is not before us presently. We merely reiterate that a finding of adaptation is substantially more reasonable in circumstances in which an already adapted structure lacks features supporting continuous overnight accommodation for some temporary period, than in a situation in which the structure has not yet been adapted for overnight accommodation, albeit the adaptation may be planned and underway.

Our holding is that the evidence presented in this case is insufficient to support a finding that the subject structure was adapted for overnight accommodation at the time of Appellant's illegal entry.

The order of the Superior Court is reversed and the matter is remanded for further proceedings consistent with this opinion. Jurisdiction is relinquished.

Former Justice GREENSPAN did not participate in the decision of this case.

Chief Justice CASTILLE, Justices BAER, TODD and McCAFFERY join the opinion.

Justice EAKIN files a dissenting opinion.

Justice EAKIN, dissenting.

I respectfully dissent from the majority's holding that the evidence presented was insufficient to support a finding the structure was adapted for overnight accommodation. While there is reason to agree with the majority's conclusion in this factually-specific case, the question on appeal is simply whether the facts, viewed in the light most favorable to the verdict winner, support the finding made by those who actually heard and saw the evidence. I believe they do.

In reviewing a sufficiency of the evidence claim, "[t]he critical inquiry . . . does not require a court to 'ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt.'" *Commonwealth v. Ratsamy*, 594 Pa. 176, 934 A.2d 1233, 1235 (2007) (emphasis in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Rather, the court "must determine simply whether the evidence believed by the fact-finder was sufficient to support the verdict." *Id.*, at 1236. In doing so, "all of the evidence and any inferences drawn therefrom must be viewed in the light most favorable to the Commonwealth as the verdict winner." *Id.* (citing *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000)).

Mr. Prato, a carpenter by trade, testified that at the time of the fire, the exterior of the house was completed, including all windows, doors, and corresponding locks. N.T. Trial, 6/27/05, at 81, 122. On the interior, Mr. Prato stated he was nearly finished with the insulation, and drywall was placed throughout the house, ready to be installed. *Id.*, at 81–82. After the drywall was hung, only trim-work and painting remained to be completed, as well as final flooring, cabinets, and installation of fixtures. The house was wired for electricity and had two working receptacles used for construction tools and lighting, including a series of lights hanging in the basement and a large mercury-vapor light on a timer. The house was connect-

ed to the public water system, and the plumbing was completed, though the plumbing fixtures were not installed. A permanent furnace was also installed. An outdoor wood burner was connected to the heating system, as was an air conditioning system. Numerous appliances and fixtures, including a pedestal sink, two refrigerators, a dishwasher, double oven, cook-top, microwave, and oven hood, were stored in the basement.

While some work had yet to be performed, the question for the jury was not whether the structure was finished, nor whether it was ready for occupancy—the question was whether it was "adapted for overnight accommodation." The record, viewed in the light most favorable to the verdict winner, provides sufficient support for a finding that, at the time of the fire, the house was adapted for overnight accommodation.

The jury could have returned a guilty verdict if it found the structure to be either a "building" or an "occupied structure." The majority suggests it is more likely the jury found the structure to merely be a building, as it convicted Appellant of arson of an unoccupied structure, not an occupied structure. This is not an unreasonable interpretation, but there never was a suggestion the structure was occupied—the jury could not reasonably find there was arson of an occupied structure, since no one was there. This is not an inconsistent verdict, as the burglary question is whether the structure was made to be occupied, not whether it was actually occupied.

The majority also quotes the following testimony to support its determination that the structure was not adapted for overnight accommodation:

Q: [Is it] [f]air to say that you didn't get the house to the point where *you could live in it yet,* correct?

A: That's fair to say, yes.

N.T., 6/27/05, at 142 (emphasis added). However, the statute does not require permanent, continuous occupancy as commonly associated with "living" in a residence. Rather, the statute merely requires the structure be adapted for overnight accommodation. Indeed, by citing *Commonwealth v. Nixon,*

801 A.2d 1241 (Pa.Super.2002), the majority acknowledges a structure does not need to be "lived in" in order for it to be considered adapted for overnight accommodation.[1] This was a house, a residence built specifically for the purpose of overnight accommodation—that the interior work was unfinished does not change the manifest purpose of the building nor its essential and obvious nature.

Viewing the record in the light most favorable to the Commonwealth, there is sufficient evidence to support the conviction of burglary as a first degree felony. Accordingly, I respectfully dissent.

---

1. Although as the majority notes, the *Nixon* holding is not before us, it states "a finding of adaptation is substantially more reasonable in circumstances in which an already adapted structure lacks features supporting continuous overnight accommodation for some temporary period, than in a situation in which the structure has not yet been adapted for overnight accommodation...." Majority Op., at 594, 9 A.3d at 204. If the majority acknowledges a building without necessary utilities can be adapted for overnight accommodation, how is it that a fully-enclosed building with water, heat, and electricity cannot be found to be so? While a bright-line rule is inappropriate in this situation, it is not unreasonable for a fact-finder to conclude a building with four walls, a roof, windows, doors, and utilities is adapted for overnight accommodation, even though no one has yet moved in.