J-A25008-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERT UPSHAW, | : | |
| | : | |
| Appellant | : | No. 310 EDA 2015 |

Appeal from the Judgment of Sentence December 23, 2014,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0015017-2013

BEFORE:  DONOHUE, MUNDY and FITZGERALD*, JJ.

MEMORANDUM BY DONOHUE, J.:                **FILED OCTOBER 20, 2015**

Appellant, Robert Upshaw ("Upshaw"), appeals from the judgment of sentence entered on December 23, 2014 by the Court of Common Pleas of Philadelphia County, Criminal Division, following his convictions of burglary, criminal trespass, criminal mischief, theft by unlawful taking, and receiving stolen property.[1]  For the reasons that follow, we vacate Upshaw's judgment of sentence and remand for resentencing.

We summarize the relevant facts and procedural history of this case as follows.  On October 5, 2013, Veronica Joyner ("Joyner") went to her house at 2118 West Tioga Street, Philadelphia, Pennsylvania ("the property") because her neighbors had told her they saw a man enter the house.  When she arrived at the property, Joyner called the police and waited out front for

---

[1]    18 Pa.C.S.A. §§ 3502(a)(2), 3303(a)(1)(ii), 3304(a)(2), 3921(a), 3925(a).

*Former Justice specially assigned to the Superior Court.

assistance to arrive. Soon thereafter, Officer Matthew Lally ("Officer Lally") arrived at the scene and entered the property through a cellar door that he testified looked like someone had forced open. Once inside the property, Officer Lally found Upshaw crouched behind a couch on the first floor. Joyner testified that Upshaw did not have her permission to be inside the property. After Officer Lally placed Upshaw under arrest, Joyner entered the property and observed that the stained glass windows had been removed, a door had been taken off its hinges, and that clothing, shoes and tools were missing. Joyner testified that there was $3,000 worth of damage to the property and another "couple of thousand dollars" worth of personal property was missing.

Regarding the condition of the property, Joyner testified that she did not live fulltime at the property because it did not have electricity, water or heat. Joyner explained that she spent her afternoons at the property, but would usually spend the night at her other house located about six doors away. Joyner stated that the property contained furniture, including a bed and sofa, and several general household objects. While she did not normally spend the night at the property, Joyner testified that she had stayed there overnight three or four days before the incident.[2] Joyner stated that

_____

[2] Upshaw disputes that Joyner testified that she had spent the night at property three or four days prior to this incident. *See* Upshaw's Brief at 6 n.2. Joyner's testimony clearly reveals, however, that she did spend the night at the property three or four days prior to the incident:

approximately three weeks prior to this incident, the property was burglarized and its locks broken, so she boarded the doors and windows and secured the front door with a padlock and deadbolt.

Upshaw waived his right to a trial by jury. On September 5, 2014, at the conclusion of his bench trial, the trial court found Upshaw guilty of the above-referenced crimes. On December 23, 2014, the trial court sentenced Upshaw to three to six years of incarceration on the burglary charge, followed by three years of probation. The trial court also sentenced Upshaw to three years of probation on the criminal mischief charge, consecutive to the burglary sentence, three years of probation on the theft charge, concurrent to the criminal mischief sentence, and no further penalty on the remaining charges.

On January 7, 2015, Upshaw filed a motion for modification of sentence, alleging that his sentence for theft was illegal because it merged with burglary for purposes of sentencing. On January 16, 2015, the trial court granted Upshaw's motion and vacated the three-year probationary sentence for theft. On January 22, 2015, Upshaw filed a timely notice of appeal. On January 23, 2015, the trial court ordered Upshaw to file a

---

Q. And when -- before the date of October 5th, when was the last time you spent the night there?

A. Three or four days prior.

N.T., 9/5/14, at 9.

concise statement of the errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure.  On February 12, 2015, Upshaw filed a timely Rule 1925(b) statement.

On appeal, Upshaw raises the following issues for our review:

> 1.    Was not the evidence insufficient to sustain a conviction for burglary as a felony of the first degree, 18 Pa.C.S. § 3502(a)(2), because the property, which had no electricity, plumbing or heat, was not adapted for overnight accommodation?
>
> 2.    As the lower court agreed in its Rule 1925 [o]pinion, was not the evidence insufficient to sustain a conviction for criminal mischief graded as a felony of the third degree where the estimated damage was about $3,000, not loss in excess of $5,000 as required by 18 Pa.C.S. § 3304(b).

Upshaw's Brief at 3.

The issues Upshaw raises on appeal challenge the sufficiency of the evidence for his burglary and criminal mischief convictions.  We utilize the following standard of review when presented with a challenge to the sufficiency of the evidence:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." ***Commonwealth v. Widmer***, [] 744 A.2d 745, 751 ([Pa.] 2000).  "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." ***Commonwealth v. Brewer***, 876 A.2d 1029, 1032 (Pa. Super. 2005).

> Nevertheless, "the Commonwealth need not establish guilt to a mathematical certainty." *Id.*; *see also Commonwealth v. Aguado*, 760 A.2d 1181, 1185 (Pa. Super. 2000) ("[T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence"). Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *See Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa. Super. 2001).
>
> \* \* \*
>
> Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld. *See Brewer*, 876 A.2d at 1032.

*Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa. Super. 2013) (quoting *Commonwealth v. Pettyjohn*, 64 A.3d 1072, 1074-75 (Pa. Super. 2013)).

For his first issue on appeal, Upshaw argues that the trial court erred in convicting him of burglary graded as a first-degree felony pursuant to 18 Pa.C.S.A. § 3502(a)(1). *See* Upshaw's Brief at 10-16. Upshaw contends that the property was not adapted for overnight accommodation, as required for a conviction under section 3502(a)(1), because it did not have any water, electricity or heat and had boarded up doors and windows. *See id.* Instead, Upshaw contends that under our Supreme Court's decision in

*Commonwealth v. Graham*, 9 A.3d 196 (Pa. 2010), the trial court should have graded his burglary conviction as a second-degree felony pursuant to 18 Pa.C.S.A. § 3502(a)(4).  *See* Upshaw's Brief at 10-16.

Section 3502 of the Pennsylvania Crimes Code defines burglary, in pertinent part, as follows:

> **(a)  Offense defined.--**A person commits the offense of burglary if, with the intent to commit a crime therein, the person:
>
>        \*     \*     \*
>
> (2) enters a building or occupied structure, or separately secured or occupied portion thereof that is **adapted for overnight accommodations** in which at the time of the offense no person is present;
>
>        \*     \*     \*
>
> (4) enters a building or occupied structure, or separately secured or occupied portion thereof that is **not adapted for overnight accommodations** in which at the time of the offense no person is present.

18 Pa.C.S.A. § 3502(a)(2), (4) (emphasis added).  Burglary under section 3502(a)(2) is graded as a first-degree felony, while burglary under section 3502(a)(4) is graded as a second-degree felony.  18 Pa.C.S.A. § 3502(c).

Here, in determining that the property was adapted for overnight accommodation, and therefore, that Upshaw's burglary conviction fell under section 3502(a)(2), the trial court relied on *Commonwealth v. Nixon*, 801 A.2d 1241 (Pa. Super. 2002).  *See* Trial Court Opinion, 3/16/15, at 3-4.  In

*Nixon*, this Court faced the issue of whether an unoccupied row home that was undergoing a renovation and had its water and electricity turned off constituted a building adapted for overnight accommodation. *Nixon*, 801 A.2d at 1243. The daughter and grandson of the owner occupied the home up until a few months prior to the burglary. *Id.* Around the time of the burglary, the home was undergoing renovations. *See id.* During this time, the house was still furnished, but the water and electricity had been shut off. *Id.*

In concluding that the row home was adapted for overnight accommodation, *see id.* at 1247-48, our Court explained, "[t]he Courts of this Commonwealth have not set forth either a test or a list of factors to be considered in determining whether a structure is adapted for overnight accommodation." *Id.* at 1244 (footnote omitted). "Although no clear-cut test exists, we believe … that the focus of the determination of whether a structure is adapted for overnight accommodation should be the nature of the structure itself and its intended use, and not whether the structure is in fact inhabited." *Id.* at 1247. Our Court ultimately concluded that "[a]n examination of the house burglarized in the instant case leads us to the reasonable conclusion that it was intended to be used as a residential property and was adapted for overnight accommodation as found by the [t]rial [c]ourt." *Id.* at 1247-48.

Upshaw, however, asserts that our Supreme Court's decision in **Graham** compels the determination that the property was not adapted for overnight accommodation. **See** Upshaw's Brief at 11-16. Somewhat similar to **Nixon**, **Graham** involved the burglary (and arson) of a new house under construction. **See Graham**, 9 A.3d at 197. In **Graham**, the house at issue had the following characteristics immediately prior to the burglary:

> [T]he exterior work on the building was complete; windows and doors were installed, albeit lacking trim; concrete was poured; electrical and plumbing rough-in work had been accomplished; temporary heat was available for construction purposes; and running water was available via two spigots, one located on the building's exterior and the other in the garage. On the other hand, the owner stated that: only two electrical circuits were active for construction purposes; plumbing was stub, with no fixtures in place and only an unattached pedestal sink on premises; walls were framed, but the framing remained open and uncovered; drywall was on premises but uninstalled; lighting was limited to construction and security purposes; the permanent furnace was in place but not operational; kitchen appliances and cabinets remained packed and stored in the basement; and there was no running water in the planned living space.

**Id.** Our Supreme Court determined that "the evidence presented in this case is insufficient to support a finding that the subject structure was adapted for overnight accommodation at the time of Appellant's illegal entry." **Id.** at 204. In so holding, the Supreme Court relied on the following characteristics of the house at issue in that case:

> [R]unning water was available in the planned living space solely via attachment of a garden hose to spigots in the garage or on the exterior; no toilet facilities were present; and there were no furnishings available for sleeping. According to the owner-victim's uncontradicted testimony, all working utility services were configured for construction purposes only.

*Id.* at 203.

The Supreme Court emphasized the difference between a structure already adapted for overnight accommodations and those that are on their way to being so adapted. *See id.* at 203-04. The Court explained:

> As other courts have recognized, the adaptation inquiry is fact intensive, and material differences will arise depending on the form and degree of adaptation intended and accomplished. In particular, there are pertinent differences between structures which have been fully adapted for overnight accommodation, but which temporarily lack services or other features of full adaptation, and those which have never been so adapted, albeit work may be underway in furtherance of such objective.

*Id.* at 204. Importantly, the Supreme distinguished the *Graham* decision from our Court's decision in *Nixon*:

> We have no difficulty with the *Nixon* [C]ourt's explanation that the primary focus, in assessing adaptation, should be the nature of the structure and its intended use, as distinguished from present use for inhabitation. *See Nixon*, 801 A.2d at 1247. We believe, however, that the "nature" criterion is broad enough to subsume consideration of the progress of a planned adaptation in construction scenarios. Indeed, as recognized by the Texas court in [*Blankenship v. State*, 780 S.W.2d 198 (Tex. Crim. App. 1989) (en banc)], there are a multitude of sub-

factors which may be considered.[3]  *See* [*id.*] at 209.

Finally, the **Nixon** holding – that a previously completed row house under renovation, with electric and water services suspended, was adapted for overnight accommodation – is not before us presently.  We merely reiterate that a finding of adaptation is substantially more reasonable in circumstances in which an already adapted structure lacks features supporting continuous overnight accommodation for some temporary period, than in a situation in which the structure has not yet been adapted for overnight accommodation, albeit the adaptation may be planned and underway.

*Id.* at 204.

We conclude that in this case, the property is more akin to the row home undergoing renovations in **Nixon** than the new house under

---

[3]  The passage from **Blankenship** to which the Supreme Court referred provides:

What makes a structure "suitable" or "not suitable" for overnight accommodation is a complex, subjective factual question fit for a jury's determination.  Their inquiry could be guided by reference to whether someone was using the structure or vehicle as a residence at the time of the offense; whether the structure or vehicle contained bedding, furniture, utilities, or other belongings common to a residential structure; and whether the structure is of such a character that it was probably intended to accommodate persons overnight (e.g. house, apartment, condominium, sleeping car, mobile home, house trailer).  All of these factors are relevant; none are essential or necessarily dispositive.

**Graham**, 9 A.3d at 200-01 (quoting **Blankenship**, 780 S.W.2d at 209).

construction in **Graham**. While the property had boarded doors and windows, and no water, electricity or heat, the nature of the property and the manner in which Joyner used it indicates that it was adapted for overnight accommodation. Joyner testified that although she did not regularly sleep at the property, she frequently spent her days there and had spent the night in the house as recently as three or four nights prior to the burglary. N.T., 9/5/14, at 9. Joyner further testified that the property contained several general household items, including, inter alia, clothing, shoes, bedding, paperwork, Christmas decorations, and blinds. **Id.** at 10-11. The certified record reflects that the property was furnished, and those furnishings included, inter alia, a bed, a sofa, and a coffee table. **Id.** at 9, 51.

As both our Supreme Court in **Graham** and this Court in **Nixon** emphasized, there are a multitude of factors courts can consider in an adaptation analysis, and that the focus in assessing adaptation should be on the nature of the structure and its intended use. **See Graham**, 9 A.3d at 204; **Nixon**, 801 A.2d at 1247. Therefore, the lack of any water, electricity or heat, or any evidence of there ever being such utilities, in the property does not automatically require its classification as not adapted for overnight accommodations.[4] Thus, we conclude, based on the evidence presented,

---

[4] For example, a cabin in the woods, used by the owner for vacation purposes may not be inhabited fulltime, and if it is particularly remote, may

- 11 -

viewed in the light most favorable to the Commonwealth as the verdict winner, that the trial court did not err in concluding that the property was adapted for overnight accommodation. Accordingly, the evidence was sufficient to sustain Upshaw's conviction of burglary as a first-degree felony.

For his second issue on appeal, Upshaw argues that the evidence was insufficient to sustain his conviction of criminal mischief graded as third-degree felony because the estimated damage to the property was $3,000, which did not exceed $5,000 as required by section 3304(b) of the Crimes Code. *See* Upshaw's Brief at 16-17. Upshaw therefore asserts that the trial court should have graded his criminal mischief conviction as a second-degree misdemeanor. *See id.*

Section 3304(b) provides as follows:

> **(b) Grading.--**Criminal mischief is a felony of the third degree if the actor intentionally causes pecuniary loss **in excess of $5,000**, or a substantial interruption or impairment of public communication, transportation, supply of water, gas or power, or other public service. It is a misdemeanor of the second degree if the actor intentionally causes pecuniary loss in excess of $1,000, or a misdemeanor of the third degree if he intentionally or recklessly causes pecuniary loss in excess of $500 or causes a loss in excess of $150 for a violation of subsection (a)(4). Otherwise criminal mischief is a summary offense.

not have utilities such as water, electricity or heat. If, however, the owner from time to time spends the night in the cabin, the cabin is furnished with beds and seating, and the cabin contains other household items, the nature of the structure and its intended use would indicate that the structure is adapted for overnight accommodation.

18 Pa.C.S.A. § 3304(b) (emphasis added).

Regarding the losses she incurred as a result of the burglary of the property, Joyner testified as follows:

> Q. Now, did you ever receive an estimate for damage that was done to your property?
>
> A. Informal, yes. I didn't ask immediately for a --
>
> Q. And what was that?
>
> A. About $3,000.
>
> \*     \*     \*
>
> Q. What was the value, approximately, of the items that were missing?
>
> A. A couple thousand [] dollars, jackets, suits. Brand-new stuff that I had just stored up there because it was there, the space.

N.T., 9/5/14, at 16.

The Commonwealth contends that the record reflects that Joyner sustained losses well in excess of $5,000 resulting from the burglary. *See* Commonwealth's Brief at 13-14. The Commonwealth argues that the word "couple" means two and that therefore, Joyner testified that she lost $2,000 worth of property from the burglary in addition to the approximately $3,000 worth of damage that the property sustained. *See id.*

Even if we were to make the leap requested by the Commonwealth, and interpret Joyner's testimony that she lost a "couple" of thousand dollars

of property during the burglary to mean that she lost $2,000 from the burglary, the total loss Joyner sustained would only amount to $5,000. Section 3304(b) unequivocally requires "pecuniary loss **in excess of $5,000**" in order for criminal mischief to be graded as a third-degree felony. 18 Pa.C.S.A. § 3304(b) (emphasis added). Indeed, the trial court concedes that it incorrectly graded Upshaw's criminal mischief conviction as a third-degree felony and that it should be corrected to a second-degree misdemeanor. Trial Court Opinion, 3/16/15, at 6. Therefore, we conclude that the evidence was insufficient to sustain Upshaw's conviction of criminal mischief as a third-degree felony. Because Joyner did testify that she received an estimate for $3,000 worth of damage to her house, we conclude that the evidence was sufficient to sustain Upshaw's conviction of criminal mischief as a second-degree misdemeanor. *See id.*

We further find unavailing the Commonwealth's argument that there is evidence in the record that the property actually sustained $20,000 worth of damage. The Commonwealth points to defense counsel's cross-examination of Joyner, during which defense counsel brought out that Joyner, in her police statement that she gave on the day of the burglary, stated that she sustained $20,000 worth of damage from the burglary. *See* N.T., 9/5/14, at 42-43. We emphasize that when assessing the sufficiency of the evidence, the factfinder "is free to believe all, part or none of the evidence." *Commonwealth v. Garland*, 63 A.3d 339, 345 (Pa. Super. 2013)

(quotations and citation omitted). Here, the trial court credited Joyner's trial testimony that she sustained $3,000 in property damage. *See* N.T., 9/5/14, at 67. By conceding that it incorrectly graded Upshaw's criminal mischief conviction as a third-degree felony, the trial court implicitly discredited Joyner's statement to police that her home sustained $20,000 worth of damage during the burglary. Accordingly, the record does not support the Commonwealth's assertion that the property sustained $20,000 worth of damage.

Because the trial court imposed Upshaw's probationary sentence for criminal mischief consecutive to his probationary sentence for burglary, our disposition has disturbed the trial court's overall sentencing scheme. Accordingly, we vacate Upshaw's judgment of sentence in its entirety and remand for resentencing on all charges. *See Commonwealth v. Williams*, 997 A.2d 1205, 1210–11 (Pa. Super. 2010) ("if a correction by this Court may upset the sentencing scheme envisioned by the trial court, the better practice is to remand [for resentencing]") (internal quotations, citations, and corrections omitted).

Judgment of sentence vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Mundy, J. joins the Memorandum.

Fitzgerald, J. concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/20/2015