**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KYLE KLEIN | : | |
| | : | |
| Appellant | : | No. 2072 EDA 2021 |

Appeal from the Judgment of Sentence Entered August 19, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001638-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KYLE KLEIN | : | |
| | : | |
| Appellant | : | No. 2073 EDA 2021 |

Appeal from the Judgment of Sentence Entered August 19, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001639-2020

BEFORE: BOWES, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.: **FILED DECEMBER 28, 2022**

Kyle Klein appeals from his August 19, 2021 judgments of sentence that amounted to an aggregate term of fifteen to thirty years of incarceration, which were imposed after he was found guilty at a consolidated non-jury trial of arson of an occupied building or structure, abuse of a corpse, criminal

---

[*] Former Justice specially assigned to the Superior Court.

conspiracy, tampering with physical evidence, and obstructing administration of law at Case No. CP-51-CR-0001638-2020 ("Case No. 1638"), and voluntary manslaughter and possessing an instrument of crime at Case No. CP-51-CR-0001639-2020 ("Case No. 1639"). After careful review, we affirm.

These cases concern the violent death of Jamil Odom ("the victim"), which occurred on June 2, 2016, and Appellant's conduct thereafter.[1] Around that time, Appellant was simultaneously involved in entangled romantic relationships with the victim and a then-sixteen-year-old, Steffanie Hart. During this same period, Appellant was serving a sentence of house arrest in an unrelated case at his parents' house at 221 East Price Street in Philadelphia, Pennsylvania, where Ms. Hart and the victim occasionally stayed with Appellant. When not at 221 East Price Street, all three individuals regularly utilized an unoccupied home across the street at 222 East Price Street as an *ad hoc* residence and gathering place.

On the day of the victim's death, Appellant had decided to abscond from house arrest with Ms. Hart and not the victim. Prior to fleeing, Ms. Hart and Appellant confronted the victim at 222 East Price Street, sharing their intention to leave without the victim. The victim became angry and declared that she would not allow Appellant to leave with Ms. Hart. The victim then retrieved a "butcher's knife" from inside of a nearby chest of drawers and

---

[1] In the certified record, the victim is described as "a male who was female presenting" and who went by the name "China" at the time of these events. Trial Court Opinion, 12/10/21, at 3. Based upon the averments present in the certified record, we will refer to the victim utilizing "she/her" pronouns.

- 2 -

charged at Ms. Hart. N.T. Trial, 6/9/21, at 99-100, 150-51. Appellant tackled the victim before she reached Ms. Hart. During the ensuing struggle, Appellant disarmed the victim and the knife fell to the floor. Thereafter, both Appellant and the victim attempted to grab it. *Id*. at 178-79. Ultimately, Appellant prevailed and secured control of the knife. While the victim was still "on the ground," Appellant stabbed her repeatedly in the neck, chest, and back until she was "no longer moving." *Id*. at 103-04, 142-44. Afterwards, Appellant wrapped the victim's body a plastic sheet, forced her remains inside of a small wooden chest, and moved the container to the basement of 222 East Price Street. Then, he and Ms. Hart fled to temporary housing in a different area of Philadelphia for several weeks.

On June 25, 2016, Appellant and Ms. Hart returned to 222 East Price Street. While Ms. Hart kept watch outside, Appellant ventured inside of the residence and exited several minutes later. Shortly thereafter, smoke began to pour from the house. The resulting structural fire did significant damage to the building. Emergency responders quickly discovered the victim's body, which was found "wrapped in plastic and stuffed inside of a wooden chest." Trial Court Opinion, 12/10/21, at 2-3. The Fire Marshal's Office of Philadelphia determined that the fire had been caused by "open flame applied to combustibles" inside of the home and that the conflagration had "originated next to the [victim]'s body[.]" *Id*. An autopsy confirmed the victim died from stab wounds to her heart and left lung. *See* N.T. Trial, 6/8/21, at 123-25. Thereafter, the case went cold for more than three years.

In November 2019, Ms. Hart was taken into custody during an unrelated inquiry and provided a statement reciting the events described above to homicide detectives. Appellant was taken into custody shortly thereafter and charged with the crimes noted above, except at Case No. 1639 the Commonwealth originally charged Appellant with one count of ungraded homicide. In exchange for Appellant waiving his right to a jury trial, the Commonwealth agreed not to seek a first-degree murder conviction in connection with the ungraded homicide charge. Although the Commonwealth did not revise the information, Appellant essentially faced one count of third-degree murder in addition to the other charges noted above. **See** N.T. Trial, 6/7/21, at 18-19 ("So third degree murder is the highest charge that you are facing in a waiver, in a [j]udge trial.").

Following this agreement, a consolidated, non-jury trial was held from June 7 through June 10, 2021, wherein Ms. Hart testified extensively regarding the death of the victim and the fire at 222 East Price Street. **See** N.T. Trial, 6/9/21, at 56-187. At the conclusion of the Commonwealth's case, Appellant requested either a judgment of acquittal as to third-degree murder on the basis that Appellant had slain the victim in defense of Ms. Hart, or, in the alternative, a finding of voluntary manslaughter. **See** N.T. Trial, 6/10/21, at 16-17. Appellant also requested the trial court enter a judgment of acquittal as to the charge of arson, arguing the residence at 222 East Price Street did not meet the definition of an "occupied structure." **Id**. at 16-23.

Ultimately, the trial court found Appellant guilty of voluntary manslaughter along with the other crimes noted above and imposed an aggregate sentence of fifteen to thirty years of incarceration on all counts. Appellant filed timely post-sentence motions at both cases asserting, *inter alia*, that the convictions were contrary to the sufficiency and weight of the evidence, which were denied. Thereafter, Appellant filed separate, timely notices of appeal.[2] On October 20, 2021, the trial court directed Appellant to file concise statements of errors pursuant to Pa.R.A.P. 1925(b) within twenty-one days. On November 11, 2021, Appellant filed his statements. In response, the trial court filed a Rule 1925(a) opinion addressing the merits of his issues.[3] On appeal, this Court consolidated these cases *sua sponte*.

_____

[2] Although Appellant's distinct notices of appeal list both docket numbers, the notices were filed at different times and separately contain a checkmark next to the appropriate trial court docket number. Thus, Appellant has complied with prevailing practice pursuant to **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018) and Pa.R.A.P. 341(a). **See Commonwealth v. Johnson**, 236 A.3d 1141, 1148 (Pa.Super. 2020) (*en banc*) (holding petitioner complied with **Walker** by filing distinguishable notices of appeal at each trial court docket number, irrespective of whether the notices bore multiple docket numbers).

[3] Appellant's filing of his Rule 1925(b) statement was untimely by one day. However, "[t]he untimely filing of a court-ordered Rule 1925(b) statement does not automatically result in waiver of the issues on appeal. If the trial court accepts an untimely Rule 1925(b) statement and addresses the issues raised in its Rule 1925(a) opinion, we will not determine the issues to be waived." **Commonwealth v. Rodriguez**, 81 A.3d 103, 104 n.2 (Pa.Super. 2013). Instantly, the trial court accepted Appellant's untimely statement and addressed the issues raised therein. Thus, we need not remand this matter for the preparation of a *nunc pro tunc* concise statement pursuant to Pa.R.A.P. 1925(c)(3) (permitting remand for *nunc pro tunc* filing where a criminal defendant is represented by counsel who fails to file a timely Rule 1925(b)

*(Footnote Continued Next Page)*

Appellant has raised the following issues for our consideration:

1. Whether the evidence was insufficient to support Appellant's conviction for voluntary manslaughter.

2. Whether the evidence was insufficient to support Appellant's conviction for first-degree arson.

3. Whether Appellant's conviction for voluntary manslaughter was against the weight of the evidence.

4. Whether Appellant's conviction for first-degree arson was against the weight of the evidence.

Appellant's brief at 8 (issues reordered for ease of disposition). We will address each of these claims *seriatim*.

Appellant first alleges that the Commonwealth failed to adduce sufficient evidence to support Appellant's conviction for voluntary manslaughter. ***See*** Appellant's brief at 18 ("[T]he Appellant's justification defense has not been disproved because the Commonwealth has failed to present sufficient evidence"). We bear the following basic legal principles in mind:

> Our standard of review in assessing whether sufficient evidence was presented to sustain an appellant's conviction is well-settled. The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In

---

statement when ordered to do so by the trial court). ***See Commonwealth v. Thompson***, 39 A.3d 335, 340 n.11 (Pa.Super. 2012) ("[R]emand is not necessary where trial court addressed issues in untimely Rule 1925(b) statement[.]") (citing ***Commonwealth v. Burton***, 973 A.2d 428, 434 (Pa.Super. 2009)).

addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Boyer*, 282 A.3d 1161, 1171 (Pa.Super. 2022). A challenge to the sufficiency of the evidence presents a question of law and, consequently, it subject to plenary review under a *de novo* standard. *See Commonwealth v. Smith*, 234 A.3d 576, 581 (Pa. 2020).

Instantly, Appellant does not deny killing the victim but asserts that he acted in defense of Ms. Hart. This argument is essentially an "amalgam of defense of others, 18 Pa.C.S. § 506(a) ("Use of force for the protection of other persons") and voluntary manslaughter[.]" *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1121 n.11 (Pa. 2012). The use of force to protect another is enshrined in statute, which states as follows:

**(a) General rule.**—The use of force upon or toward the person of another is justifiable to protect a third person when:

(1) the actor would be justified under section 505 (relating to use of force in self-protection) in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect;

(2) under the circumstances as the actor believes them to be, the person whom he seeks to protect would be justified in using such protective force; and

(3) the actor believes that his intervention is necessary for the protection of such other person.

18 Pa.C.S. § 506(a)(1)-(3). A defendant who uses force in defense of another "steps into the shoes of the person defended." *Commonwealth v. Jackson*, 355 A.2d 572, 576 (Pa. 1976). Thus, the analysis as to "whether a person is permitted to use force in self defense, is identical to the analysis used when an individual acts in defense of another[.]" *Commonwealth v. Smith*, 710 A.2d 1218, 1220 (Pa.Super. 1998) (citing 18 Pa.C.S. § 506(a)(1)).

With this critical parity of standards in mind, we note that the legal standards governing self-defense in Pennsylvania are well-established:

Self-defense is a complete defense to a homicide charge if (1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force to prevent such harm; (2) the defendant did not provoke the threat that resulted in the slaying; and (3) the defendant did not violate a duty to retreat. Where the defendant has introduced evidence of self-defense, the burden is on the Commonwealth to disprove the self-defense claim beyond a reasonable doubt by proving that at least one of those three elements is absent. If the Commonwealth proves that the defendant's belief that deadly force was necessary was unreasonable but does not disprove that the defendant genuinely believed that he was in imminent danger that required deadly force and does not disprove either of the other elements of self-defense, the defendant may be found guilty only of voluntary manslaughter under the defense of imperfect self-defense.

*Commonwealth v. Jones*, 271 A.3d 452, 458 (Pa.Super. 2021) (cleaned up). Thus, a defendant is guilty of voluntary manslaughter where the evidence

establishes he actually but unreasonably believed that deadly force was necessary to protect himself or another against the use of unlawful force. **_See Commonwealth v. Truong_**, 36 A.3d 592, 599 (Pa.Super. 2012). In this specific context, our Supreme Court has stated that the evidence must establish that "the slayer used no more force than was necessary or reasonably appeared to him to be necessary to save himself [or another] from death, great bodily harm or the commission of a felony." **_Commonwealth v. Wrona_**, 275 A.2d 78, 80 (Pa. 1971).

Assuming, _arguendo_, that Appellant's initial belief that Ms. Hart was in imminent danger of death or great bodily harm was reasonable and actual when he tackled the victim, the evidence sufficiently established that Appellant's subsequent use of lethal force upon the victim while she was prone was unreasonable given that Appellant was able to disarm the victim and gain control of the knife while the victim remained on the ground.

We find **_Commonwealth v. Stots_**, 261 A.2d 577 (Pa. 1970) to be particularly instructive. In that case, our Supreme Court found sufficient evidence to support a conviction for voluntary manslaughter where the defendant was threatened by a knife-wielding assailant, successfully disarmed him, and then used the same knife to kill his would-be-attacker by stabbing him ten times. **_Id_**. at 580. Specifically, the High Court determined that the defendant's claim of self-defense was "totally refuted" by the manner of the aggressor's death. **_Id_**.; **_see also_**, **_e.g._**, **_Commonwealth v. Boone_**, 354 A.2d

- 9 -

898, 903 (Pa. 1975) (finding sufficient evidence to support conviction for voluntary manslaughter where the defendant disarmed a knife-wielding aggressor and stabbed her to death in the "chest, back, arms and shoulder").

Viewed in the light most favorable to the Commonwealth, the evidence of record in this case establishes that Appellant was completely successful in preventing the victim's attempted attack upon Ms. Hart. He stopped the assault by tackling the victim, successfully disarmed her, gained control of the knife without inflicting any serious physical harm upon the victim, and left the victim on the floor of the residence. While Ms. Hart's testimony indicated that the victim did not relent after Appellant gained control of the knife, there are no of-record facts that would support a conclusion that the use of deadly force was reasonable and necessary after the victim was disarmed and prone. Indeed, it was only after Appellant had gained a definitive upper hand that he took advantage of the victim's vulnerability and stabbed her to death. *See* N.T. Trial, 6/9/21, at 103-04, 142-44. Ms. Hart described Appellant's killing of the victim as "brutal." *Id*. at 144. Her testimony also indicated Appellant may have inflicted numerous wounds beyond those identified during the official autopsy of the victim's decomposed and fire-damaged remains. *Id*. at 103. Furthermore, Appellant also concealed the victim's death and fled, which speaks to his consciousness of guilt and undermines any claim of justification. *See Commonwealth v. Robson*, 337 A.2d 573, 579 (Pa. 1975).

The circumstances here are sufficient to refute Appellant's claim that his slaying of the victim was justified. Specifically, the force used by Appellant in defense of Ms. Hart was unreasonable and out of proportion to the situation. *See Stots*, *supra* at 580; *Boone*, *supra* at 903. No relief is due.

Appellant's second allegation of error challenges the sufficiency of the evidence supporting his conviction for arson of an occupied building pursuant to § 3301(a)(1)(ii), which provides that "[a] person commits a felony of the first degree if he intentionally sets a fire, . . . and if he commits the act with the purpose of destroying or damaging an inhabited building or occupied structure of another." 18 Pa.C.S. § 3301(a)(1)(ii). In conformity with the language, § 3301(a)(1)(ii) "only applies in cases where the defendant attempts to damage or destroy an 'inhabited building' or 'occupied structure.'" *Commonwealth v. Lopez*, 663 A.2d 746, 750 (Pa.Super. 1995). For these purposes, an occupied structure is defined by statute as "[a]ny structure, vehicle or place adapted for overnight accommodation of persons . . ., whether or not a person is actually present." 18 Pa.C.S. § 3301(j).

Appellant's argument here is two-fold, in that he submits there is insufficient evidence to establish: (1) that the abandoned home at 222 East Price Street was adapted for overnight accommodation; and (2) that he intended to set a fire in the building. *See* Appellant's brief at 21-26.

We will begin by addressing Appellant's argument concerning whether the residence at 222 East Price Street was adapted for overnight

accommodations within the meaning of 18 Pa.C.S. § 3301(j). As our Supreme Court has explained, this inquiry is fact-intensive and subjective:

> "What makes a structure 'suitable' or 'not suitable' for overnight accommodation is a complex, subjective factual question fit for a jury's determination. Their inquiry could be guided by reference to whether someone was using the structure or vehicle as a residence at the time of the offense; whether the structure or vehicle contained bedding, furniture, utilities, or other belongings common to a residential structure; and whether the structure is of such a character that it was probably intended to accommodate persons overnight (*e.g.*, house, apartment, condominium, sleeping car, mobile home, house trailer). All of these factors are relevant; none are essential or necessarily dispositive."

*Commonwealth v. Graham*, 9 A.3d 196, 201 (Pa. 2010) (cleaned up) (quoting *Commonwealth v. Nixon*, 801 A.2d 1241, 1245 (Pa.Super. 2002)).

Applying this standard to the instant case, we begin by noting that 222 East Price Street was a large residence whose prior tenants had recently moved out at the time of these events. *See* N.T. Trial, 6/9/21, at 47. Thus, it is not disputed that this structure was generally intended to accommodate persons overnight. The testimony at trial also indicated that the house was replete with bedding, furniture, and other sundry items that are indicative of a residential structure. *See* N.T. Trial, 6/8/21, at 23, 38, 74, 83. There was active electricity service at 222 East Price Street at the time of the fire, but no running water. *See* N.T. Trial, 6/9/21, at 162-63. Finally, the evidence at trial confirmed that Appellant, the victim, and Ms. Hart were periodically living within this residence up until the victim's untimely death. *Id*. at 74, 82.

The main thrust of Appellant's argument is that the property's general state of disrepair and lack of some utilities should disqualify it as being adapted for overnight accommodation. *See* Appellant's brief at 24. Additionally, Appellant argues that there is no evidence that anyone else occupied the structure following the victim's death. *Id*. at 24-25.

However, our Supreme Court has explained that "the primary focus, in assessing adaptation, should be the nature of the structure and its intended use, as distinguished from present use for inhabitation." *Graham*, *supra* at 204. Here, there is little question 222 East Price Street was a residential structure adapted for overnight accommodation. The at-issue building may have wanted for repairs, cleaning, and restoration of certain services. These temporary conditions, however, did not preclude Appellant, Ms. Hart, or the victim from collectively making regular use of the residence for overnight accommodations during at least one month. *See* N.T. Trial, 6/9/21, at 74, 82. Our Supreme Court has held it is "reasonable" to render a "finding of adaptation" under circumstances where, as here, "an already adapted structure lacks features supporting continuous overnight accommodation for some temporary period[.]" *Graham*, *supra* at 204. Furthermore, Appellant's focus upon the lack of current residents at the time of the fire is immaterial pursuant to the relevant statutory language. *See* 18 Pa.C.S. § 3301(j) (indicating that a structure may be considered "adapted for overnight accommodation" regardless of "whether or not a person is actually present").

- 13 -

Based on the foregoing, we conclude that the evidence at trial was sufficient to establish that 222 East Price Street was adapted for overnight accommodation within the meaning of § 3301(j).

Turning to Appellant's second sufficiency argument concerning his arson conviction, he asserts that the Commonwealth did not adduce sufficient evidence of his intent. **See** Appellant's brief at 25 ("[T]here was no evidence to support the Commonwealth's argument that [Appellant] intended to damage the structure of 222 East Price Street."). We must disagree.

As a general matter, a conviction pursuant to § 3301(a)(1)(ii) requires sufficient evidence establishing that the defendant "intentionally" started a fire "with the purpose of destroying or damaging an inhabited building or occupied structure[.]" 18 Pa.C.S. § 3301(a)(1)(ii). This Court long ago determined that a defendant's actions, conduct, and voluntary declarations speak to intent to commit arson. **See Commonwealth v. Jones**, 97 Pa.Super. 417, 421 (Pa.Super. 1929). Moreover, a properly qualified expert may also separately opine regarding the intentional origins of a fire. **See Commonwealth v. Gross**, 453 A.2d 620, 622 (Pa.Super. 1982) ("The appropriateness of expert testimony relating to the incendiary origin of fires is well recognized in our courts. The expert may offer that opinion as long as it is based upon and supported by facts in the record." (cleaned up)). Finally, we emphasize the Commonwealth may sustain its burden solely by reference to circumstantial

evidence. *See Commonwealth v. Holt*, 273 A.3d 514, 531 (Pa. 2022) ("As intent is a subjective frame of mind, it is of necessity difficult of direct proof.").

Viewing the available evidence in the light most favorable to the Commonwealth, Ms. Hart testified at trial that Appellant entered 222 East Price Street on June 25, 2016, alone, and later reported to Ms. Hart that he had set the fire with lighter fluid and tissue paper. *See* N.T. Trial, 6/9/21, at 126-27. Shortly after Appellant exited the residence, smoke began to pour from the basement of the property. There is no dispute that a structural fire occurred at that same location immediately thereafter. Additionally, the Commonwealth presented testimony from a fire marshal, Lieutenant George Werez, who was qualified as an expert in fire investigations by stipulation of the parties. *See* N.T. Trial, 6/8/21, at 52-53. Ultimately, Lieutenant Werez concluded that the fire had originated after an open flame was purposefully applied to combustibles in the basement of the house. *Id*. at 60-62. There was no accidental cause. *Id*. at 66 ("Someone had to take a flame and apply it to the combustibles that were there. There is no other accidental source.").

Based on the foregoing, there was sufficient evidence to prove that Appellant set the at-issue fire intentionally and with the object of destroying or damaging 222 East Price Street beyond a reasonable doubt. *See Commonwealth v. Hardcastle*, 546 A.2d 1101, 1108 (Pa. 1988) (holding sufficient evidence existed to support arson conviction where expert opined

on the intentional nature of the fire and eyewitness testimony placed the defendant at the scene).

Appellant's remaining claims for relief challenge the weight of the evidence underlying his convictions, which is governed by well-trod precepts:

> A weight challenge is *sui generis*. Such a claim is not premised upon trial court error or some discrete and correctable event at trial, but instead ripens only after, and because of, the [fact-finder's] ultimate verdict in the case. As a result, a claim asserting that the verdict was against the weight of the evidence rests within the trial court's discretion. We review the trial court's exercise of discretion in ruling on the claim, and not whether the verdict was against the weight of the evidence. The trial court is required to consider whether [its] verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative.

***Commonwealth v. Holt***, 273 A.3d 514, 531 (Pa. 2022) (cleaned up).

In this context, "a true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." ***Commonwealth v. Thompson***, 106 A.3d 742, 758 (Pa.Super. 2014). In order to prevail in such an argument, the defendant must demonstrate that the of-record evidence is "so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Commonwealth v. Sullivan***, 820 A.2d 795, 806 (Pa.Super. 2003). Thus, "[a] new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." ***Commonwealth v. Clemons***, 200 A.3d 441, 464 (Pa. 2019). Rather, a new trial should be awarded only where the fact-finder's

verdict was "so contrary to the evidence as to shock one's sense of justice[.]"
*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013).

Instantly, Appellant has challenged the weight of the evidence underlying both his voluntary manslaughter and arson convictions. *See* Appellant's brief at 19-21, 26-28. Although presented separately, these claims collectively focus upon alleged inconsistencies in the trial evidence. *Id*. at 21 (arguing the trial court failed to consider the nature of an "inherently violent altercation that occurs when two equally fit individuals fight over a single weapon in close quarters"); *id*. at 26 ("[T]he inconsistencies in the testimony of Ms. Hart . . . negate the *mens rea* to support Appellant's conviction for [arson]."). Our review of the record belies both assertions.

In responding to Appellant's claim concerning his voluntary manslaughter conviction, the trial court opined as follows:

> The verdict in this matter was decided by the court after judging the credibility of Ms. Hart. This court found that at the point at which Appellant stabbed the victim numerous times, the victim was disarmed, and Appellant was in sole possession and control of the knife. As such, Appellant could no longer reasonably believe that he or Ms. Hart were in danger of death or serious bodily injury.

Trial Court Opinion, 12/10/21, 9-10. Similarly, the trial court also rejected Appellant's arguments concerning his arson conviction:

> The defendant ignited a fire in the basement of a three-story home which contained, not only the body of the [victim], but was filled with combustibles. Certainly, that is circumstantial evidence of his intent or purpose to destroy or damage the building. As to the argument that the building was not an occupied structure, it was

adapted for overnight accommodation of persons and it did not matter whether someone was in there or not.

*Id*. at 12.

We do not discern an abuse of discretion in the trial court's reasoning. As detailed above in our discussion of Appellant's sufficiency arguments, the trial court's conclusions are fully supported by the evidence of record and nothing in our review indicates that Appellant's convictions shock the conscience or otherwise offend notions of justice. Rather, Appellant's arguments largely retread the same ground as his sufficiency claims by urging this Court to override the trial court's credibility conclusions. However, "an appellate court does not substitute its judgment for that of the finder of fact[.]" *Commonwealth v. Lyons*, 79 A.3d 1053, 1067 (Pa. 2013). Thus, we decline Appellant's invitation to supplant the trial court's findings.

Judgments of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/28/2022

- 18 -