J-A15040-25

2025 PA Super 160

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEFFREY AGUGLIARO | : | |
| | : | |
| Appellant | : | No. 852 MDA 2024 |

Appeal from the Judgment of Sentence Entered May 10, 2024
In the Court of Common Pleas of Wyoming County Criminal Division at
No(s):  CP-66-CR-0000298-2021

BEFORE:   BOWES, J., STABILE, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED: JULY 25, 2025**

Appellant Jeffrey Agugliaro appeals from the judgment of sentence entered by the Court of Common Pleas of Wyoming County after a jury convicted Appellant of Burglary (Adapted for Overnight Accommodation, No Person Present), Criminal Trespass, and Attempted Theft by Unlawful Taking.[1] Appellant claims the trial court erred in (1) concluding there was sufficient evidence to support his burglary conviction, (2) denying his contention that the prosecution had improperly withheld evidence, and (3) imposing an aggravated range sentence unsupported by sufficient justification.  We affirm.

In November 2021, Appellant was charged with the aforementioned offenses based on allegations that he broke into a building adapted for overnight accommodation with the intent to commit theft.  On July 16, 2023, the following factual background was developed at Appellant's jury trial.

_____

[*] Former Justice specially assigned to the Superior Court.
[1] 18 Pa.C.S.A. §§ 3502(a)(2), 3503(a)(1), and 901(a), respectively.

On September 22, 2021, Officer Timothy McCoy of the Tunkhannock Township Police Department was dispatched to a residence to respond to a report of an abandoned vehicle that was parked partly in the roadway and partly in the grass for an extended period of time. Notes of Testimony (N.T.), 7/16/23, at 69-72. Officer McCoy did not find any individuals inside the car but noted that the hood of the vehicle was cold. *Id.* at 73. Officer McCoy ran the license plate and discovered the vehicle belonged to Appellant. *Id.*

Upon Officer McCoy's arrival, two individuals came from the back of the house and were identified as Appellant and Cathleen Johnson, who claimed to have been looking at the property, which they believed was for sale. *Id.* at 74. However, Officer McCoy noted that there were no signs on the property indicating that the house was for sale. *Id.* While Appellant told Officer McCoy that he had been at the property for about fifteen minutes, Ms. Johnson admitted they were on the property for over an hour. *Id.* at 75. Appellant did not know who owned the property. *Id.*

After Officer McCoy requested assistance with his investigation of this matter, Sergeant Mark Joseph Papi and Chief William Morristell of the Tunkhannock Township Police Department responded to the scene and proceeded to inspect the property. *Id.* at 76, 98. Officer McCoy indicated that the property was not in good condition and the grass was overgrown. *Id.* at 74, 79. Sergeant Papi noticed that it appeared that someone had forcibly entered the back door of the residence by breaking a pane of glass on the door. *Id.* at 99. However, Sergeant Papi surmised that the door had not been

- 2 -

open for a long time as there was no evidence that "nature had run its course." *Id.* at 109.

The officers entered the residence which contained various pieces of furniture, including a bed and a refrigerator, as well as personal items such as clothing, photographs, and "knickknacks." *Id.* at 92-94, 144. Sergeant Papi indicated that it appeared that no one was living in the residence at that time. *Id.* at 99, 111. When the officers entered the basement of the house, they noticed that copper pipes had been taken down. *Id.* at 90-91, 100, 145. Sergeant Papi testified that someone had stacked the pipes by a basement window and had begun to push the pipes out of the window. *Id.* at 100.

The officers also observed a fresh set of footprints leading to the basement and shoe impressions in the basement's dirt floor. *Id.* at 90-91, 101-102, 145, 170. Sergeant Papi inspected the bottom of Appellant's shoes, which Sergeant Papi characterized as having a distinct pattern that was identical to the footprints. *Id.* at 102. The officers seized Appellant's shoes and placed them into evidence. *Id.* at 149. Pennsylvania State Trooper Peter Smith, a member of the Forensics Services Unit, assisted the investigation by taking photographs of the scene and specifically, the footprints.

Officers transported Appellant and Ms. Johnson to their station for questioning. When Ms. Johnson exited the patrol car, officers discovered she left behind a green envelope containing assorted jewelry. *Id.* at 103-104. Ms. Johnson had no explanation for her possession of the jewelry. *Id.* at 124. Officers contacted the owner of the home, Darlene Marshall, who confirmed

the jewelry contained in the green envelope belonged to her. *Id.* at 153. Ms. Marshall told the officers that she did not give Appellant or Ms. Johnson permission to enter the residence. *Id.* at 153, 254.

The prosecution called Ms. Marshall to testify at Appellant's trial about her property, which she described as a ranch house with a basement and attic. *Id.* at 242. Ms. Marshall indicated that she had not fully maintained the home as she was not sure whether she was going to renovate it or tear it down. *Id.* at 243, 250. Although Ms. Marshall did not live in that residence at that time, she would visit it once or twice a month. *Id.* at 248. Ms. Marshall denied abandoning the house or placing it for sale, but instead testified that she planned to go back there "when her other half passed." *Id.* at 244, 249.

Ms. Marshall indicated that the home contained a dining room table, several beds, and a refrigerator. *Id.* at 243. While the house had working utilities, Ms. Marshall had turned the heat and water off and drained the pipes so they would not freeze. *Id.* at 244. Nevertheless, Ms. Marshall confirmed that the heat and water could be turned back on if she desired to do so. *Id.*

Ms. Marshall shared that she had kept jewelry in her bedroom closet, including a necklace with a "D" charm and a Christmas tree pendant. *Id.* at 245. Ms. Marshall testified that these pieces were returned to her by officers who had reportedly discovered them in the back of their patrol car where Ms. Johnson had been sitting. *Id.* at 246-47.

Ms. Johnson also testified as a witness for the prosecution at Appellant's trial. She indicated that on the day in question, she was traveling in

Appellant's car when Appellant stopped to look at the property which he believed was for sale. *Id.* at 33. Ms. Johnson testified that they walked to the back of the residence to look at the creek and noticed the back door of the home had been broken into before they had arrived there. *Id.* at 36. Ms. Johnson admitted that Appellant entered the residence and spent approximately an hour inside, while she waited outside in the grass and played on her phone. *Id.* at 43, 52-54.

Ms. Johnson indicated that Appellant had handed her the green envelope which he had removed from the house, but Ms. Johnson denied knowing what was in the envelope and simply put it in her back pocket. *Id.* at 37-38, 54. Ms. Johnson admitted she did not tell the police that Appellant had given her the envelope because she was scared of getting in trouble. *Id.* at 54-55, 60.

Appellant testified on his own behalf, indicating that he stopped at Ms. Marshall's residence on the day in question as he was interested in buying the distressed property and renovating it. *Id.* at 271-272. Appellant testified that he and Ms. Johnson were only at the property for fifteen or twenty minutes. *Id.* at 282. Appellant denied ever entering the home, denied taking anything from the property, and denied handing a green envelope to Ms. Johnson. *Id.* at 280. Rather, Appellant claimed that it was Ms. Johnson who entered the house through the back door. *Id.* at 275.

At the conclusion of Appellant's trial, on July 16, 2023, the jury convicted Appellant on all charges. When Appellant failed to appear for his sentencing scheduled for September 13, 2023, the trial court issued a bench warrant for

his arrest. On December 6, 2023, Appellant was apprehended by a bail bondman and the bench warrant was lifted.

During Appellant's December 13, 2023 sentencing hearing, the prosecution submitted a request for the trial court to impose $25,609.06 in restitution to Darlene Marshall. *Id.* at 9-10. Trial counsel asked for a separate restitution hearing, alleging that a large portion of the prosecution's proposed restitution amount "had nothing to do with the crimes or the offense for which [Appellant was] alleged of committing and ultimately convicted." N.T., 12/13/23, at 7-8. The prosecutor indicated that he did not oppose Appellant's request for a separate restitution hearing.

In considering these arguments, the trial court noted that Appellant's co-defendant, Ms. Johnson, had been charged for her participation in the crimes in this matter and was already scheduled to have a restitution hearing. The trial court expressed its intention to consolidate the matters and determine restitution for both defendants. *Id.* at 8. The trial court indicated that while it needed to set an amount for restitution in its sentencing order or such a remedy would be waived, its sentence would be "subject to the restitution hearing that is scheduled in the companion matter." *Id.* at 10.

Thereafter, the trial court sentenced Appellant to an aggregate term of twenty to sixty months' imprisonment and imposed restitution in the amount of $25,609.60 along with fines and costs. On December 20, 2023, Appellant filed a post-sentence motion and a separate motion for a restitution hearing. On December 21, 2023, the trial court denied Appellant's post-sentence

motion. On December 29, 2023, the trial court granted Appellant's request for a restitution hearing, which was scheduled for February 12, 2024. On February 12, 2023, the restitution hearing was continued to May 9, 2024.

On May 10, 2024, the trial court entered an order amending the restitution amount to $7,000.00. On June 10, 2024, Appellant purported to appeal from the sentence entered on December 13, 2023 as well as the December 21, 2023 denial of Appellant's post-sentence motion and the May 10, 2024 order amending the restitution amount.

As an initial matter, we evaluate the trial court's assertion that this appeal should be dismissed as untimely filed. The trial court claims Appellant was required to file his appeal within thirty days of the trial court's denial of Appellant's post-sentence motion, regardless of whether the restitution amount had been finalized. *See Commonwealth v. Shamberger*, 788 A.2d 408, 410, n.2 (Pa.Super. 2001) ([i]n a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions").

However, our courts have characterized similar circumstances as bifurcated sentencing proceedings in *Commonwealth v. Cochran*, 664 Pa. 438, 244 A.3d 413 (2021) and *Commonwealth v. Rapp*, 331 A.3d 17 (Pa.Super. 2025). In *Cochran*, the defendant had agreed to enter a guilty plea but disputed the prosecution's calculation of restitution and requested a restitution hearing. At the guilty plea/sentencing hearing held in June 2017, the trial court accepted Cochran's plea to various crimes, imposed a period of

- 7 -

incarceration, and included a provision in its sentencing order scheduling the requested restitution hearing for a later date. After sentencing, Cochran filed a written motion seeking a restitution hearing. The trial court held restitution hearings and entered an amended restitution order in September 2017.

On appeal, a panel of this Court determined that the trial court erred in failing to determine the amount of restitution at Cochran's sentencing hearing pursuant to 18 Pa.C.S.A. § 1106(c) (providing that "[a]t the time of sentencing the court shall specify the amount and method of restitution"). Further, this Court found that the trial court had no jurisdiction to amend its sentence more than thirty days after its entry pursuant to 42 Pa.C.S.A. § 5505.

Thereafter, our Supreme Court determined this Court erred in vacating the trial court's restitution order, which had not amended the original sentence, but was part of a bifurcated sentencing process that was finalized upon the computation of restitution. The Supreme Court provided that:

> [t]he circumstances of this particular case are unique in that defense counsel at the time of sentencing agreed to proceed with sentencing but disputed the restitution amount and requested an additional hearing. There is nothing in the Rules of Criminal Procedure or the Judicial Code that precludes a sentencing court from conducting a sentencing proceeding over multiple days as the needs of the parties and the court's schedule may necessitate. Accordingly, the trial court announced the incarceration portion of the sentence with other conditions in an order dated June 29, 2017. In response to [Cochran]'s request, the order included setting a date for a further hearing on August 28, 2017 to address certain factual issues about the ownership of the damaged property included in the Commonwealth's valuation of restitution. On this record, it is apparent the sentencing court proceeded with a segmented or bifurcated sentencing hearing, resulting in a complete and final order only on September 15, 2017. Viewed in

this manner, the sentence is compliant with Section 1106 and the issues raised by [Cochran] and addressed by the Superior Court moot.

*Cochran*, 664 Pa. 438, 244 A.3d at 420–21 (footnotes and citations omitted).

In *Rapp*, this Court determined that the parties had consented to a bifurcated sentencing procedure when the trial court imposed a probationary sentence at the initial sentencing hearing, set restitution at an amount requested by the Commonwealth, but indicated that the restitution award was subject to review at a subsequently scheduled restitution hearing. *Rapp*, 331 A.3d at 23. This Court found the parties clearly intended to allow the trial court to impose the non-restitution component of Rapp's sentence at the initial sentencing hearing and deferred finalizing the amount of restitution to a later date. *Id.* As such, this Court concluded that the initial sentencing order was interlocutory in nature and Rapp's sentence was only finalized after the trial court completed the bifurcated sentencing process by imposing the restitution component at the subsequently scheduled restitution hearing. *Id.* at 24.

Likewise, in this case, the trial court entered the non-restitution component of Appellant's sentence at his initial sentencing hearing on December 13, 2023 when it imposed an aggregate term of twenty to sixty months' imprisonment. However, the sentencing transcript shows that the parties agreed that it was necessary to hold a subsequent hearing to determine the appropriate amount of restitution. The trial court entered a placeholder amount of $25,609.60 for restitution in the sentencing order which would be subject to modification at the subsequent restitution hearing.

- 9 -

The parties demonstrated their intent to proceed with a bifurcated sentencing hearing by agreeing to defer the calculation of the exact restitution amount to a later date.

Consistent with **Cochran** and **Rapp**, the initial sentencing order entered in this case on December 13, 2023 was interlocutory as Appellant's judgment of sentence was not finalized until the entry of the trial court's May 10, 2024 order entering a final restitution amount. Accordingly, we deem Appellant's June 10, 2024 notice of appeal to be timely filed.[2]

Appellant raises the following issues for our review on appeal:

I. There is insufficient evidence to support a guilty verdict for a burglary graded as a felony of the first degree where there was no evidence of record that the premises were adapted for overnight accommodation at the time of the offense.

II. [Appellant] should receive a new trial because the government failed to provide **Brady** materials[,] specifically all evidence that tended to be exculpatory in nature.

III. The [trial] court erred by sentencing [Appellant] in the aggravated range when the sentence was not supported by sufficient reasons and ignored mitigating factors present in the case.

Appellant's Brief, at 5.

First, Appellant challenges the sufficiency of the evidence supporting his burglary conviction. Our standard of review is as follows:

_____

[2] Appellant's appeal was timely filed on Monday, June 10, 2024. **See** 1 Pa.C.S.A. § 1908 ("[w]henever the last day of any … period shall fall on a Saturday or Sunday, or on any day made a legal holiday…, such day shall be omitted from the computation").

When reviewing a challenge to the sufficiency of the evidence, we must determine whether, when viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence presented at trial and all reasonable inferences derived from the evidence was sufficient to establish all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden entirely by circumstantial evidence. Moreover, the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part or none of the evidence.

*Commonwealth v. McIntyre*, 333 A.3d 417, 432 (Pa.Super. 2025) (citing *Commonwealth v. Ramtahal*, 613 Pa. 316, 33 A.3d 602, 607 (2011)).

Appellant was convicted of first-degree burglary under Section 3502(a)(2) of the Crimes Code which provides that an individual "commits the offense of burglary if, with the intent to commit a crime therein, the person … enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense no person is present." 18 Pa.C.S.A. §§ 3502(a)(2), (c)(1). If the building, structure, or portion entered is not adapted for overnight accommodation, and no individual is present at the time of entry, burglary is a felony of the second degree. 18 Pa.C.S.A. § 3502(c)(2).

Specifically, Appellant claims there was insufficient evidence to grade his burglary conviction as a first-degree felony as he alleges that the prosecution failed to prove that the premises in question were "adapted for overnight accommodation." Appellant characterizes the residence in question as an "overgrown and dilapidated home" that had not been secured and had not been lived in for five years. Appellant's Brief, at 10. Appellant emphasizes

that the water and heat had been shut off and the property's owner was not sure whether she would redo the house or tear it down. *Id.*

In addressing similar circumstances, this Court has held that "[t]he focus of the determination of whether a structure is adapted for overnight accommodation should be the nature of the structure itself and its intended use, and not whether the structure is in fact inhabited." ***Commonwealth v. Nixon***, 801 A.2d 1241, 1247 (Pa.Super. 2002). In ***Nixon***, this Court determined that the house burglarized was adapted for overnight accommodation even though there was no one living there at the time of the burglary as the house was furnished and the owner occasionally stopped by to make sure the house was secured. *Id.* at 1244. The ***Nixon*** court was not persuaded by the appellant's argument that the house was uninhabitable simply because the owner had shut off water and electricity to the home as "the law of burglary is meant to protect those who possess *the right to inhabit or possess* the property." *Id.* at 1247 (emphasis added). The ***Nixon*** Court noted that the owner could simply call the relevant utility companies to turn the water and electricity on.

We are not persuaded to reach a different result by Appellant's citation to ***Commonwealth v. Graham***, 607 Pa. 580, 9 A.3d 196 (2010), in which the Supreme Court determined that a home under construction that had been burglarized could not be regarded as a structure adapted for overnight accommodation. In that case, while the exterior work on the building was complete, the walls were only framed with uninstalled drywall, only two

electrical circuits were active for construction purposes, there was no operational heat or running water, kitchen appliances were stored in the basement, there were no attached fixtures to the plumbing, and there was limited lighting for construction and security purposes.

The Supreme Court in **Graham** found that the home in question "was a project under construction, unfinished, unfurnished, and uninhabitable," pointing out that the only running water was a garden house in the garage or on the exterior, no toilet facilities were present, and there were no furnishings available for sleeping. **Graham**, 607 Pa. at 591-93, 9 A.3d at 203-204. The Supreme Court emphasized that the owner-victim admitted that the house was not finished to the point where someone could live in it yet. **Id.** at 593, 9 A.3d at 204.

We find that the facts of this case are distinguishable from those in **Graham** as Appellant was convicted of burglarizing a house that had been completed and previously resided in. The house in this case contained personal items and furnishings, including beds and a refrigerator. The owner also testified that she would come back to the residence periodically to check on it, averred that she did not abandon the house, and planned to return there in the future.

Although Appellant alleges that the house was uninhabitable due to its state of disrepair, the record also supports an inference that the residence was merely a home in need of repairs. We remind Appellant that we must view the record in the light most favorable to the Commonwealth as the

verdict winner. *See McIntyre*, *supra*. The record contains ample evidence to allow the jury to conclude that Appellant committed a burglary of a building or structure that was adapted for overnight accommodation. We thus find there was sufficient evidence to support Appellant's burglary conviction.

Appellant next argues that he is entitled to a new trial based on his suggestion that the prosecution violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) by failing to provide the defense with discovery materials that tended to be exculpatory in nature.[3]

Our Supreme Court has provided that, in order to establish a *Brady* violation:

> a defendant must show that: (1) evidence was suppressed by the state, either willfully or inadvertently; (2) the evidence was favorable to the defendant, either because it was exculpatory or because it could have been used for impeachment; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant. *See Commonwealth v. Lambert*, 584 Pa. 461, 471, 884 A.2d 848, 854 (2005); *Commonwealth v. Collins*, 585 Pa. 45, 68, 888 A.2d 564, 577–78 (2005). However, "the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense." *Commonwealth v. Chambers*, 570 Pa. 3, 29, 807 A.2d 872, 887 (2002) (citation omitted and emphasis added). Rather, evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 29, 807 A.2d at 887–88.

---

[3] While Appellant cites to "*U.S. v. Brady*," we presume he wished to cite to the U.S. Supreme Court's decision in *Brady v. Maryland*.

*Commonwealth v. Willis*, 616 Pa. 48, 46 A.3d 648, 656 (2012) (internal citation omitted).

Specifically, Appellant claims that the prosecution failed to provide the defense with photographs that were allegedly taken by Trooper Smith of the burglary scene, which Appellant alleges would help to demonstrate that the residence was not adapted for overnight accommodation.

However, there is no evidence such photographs exist as Trooper Smith did not testify that he took additional photos of the residence during his investigation other than the photos he took of the basement and the footprints found therein. We note that the defense presented its own photographs of the residence in question for the jury's consideration. As such, even assuming such photographs exist, we fail to see how the disclosure to the defense of additional photographs of the residence would have resulted in a different result in these proceedings.

Appellant also asserts that the prosecution failed to provide inventories of their searches of Appellant's vehicle and his person incident to arrest, which Appellant alleges would show Appellant was not in possession of burglary tools, drugs, or cash. There is no evidence that inventories of the searches of Appellant's vehicle and person exist. Further, Officer McCoy testified that there was "nothing illegal" in Appellant's vehicle, which supports Appellant's argument that he was not in possession of stolen property, burglary tools, or narcotics. We likewise conclude that Appellant has failed to demonstrate that the Commonwealth withheld material evidence such that its omission resulted

in prejudice to Appellant. Accordingly, the trial court erred in finding no merit to Appellant's ***Brady*** claim.

Lastly, Appellant argues that the trial court erred in sentencing Appellant in the aggravated range of the sentencing guidelines without stating sufficient reasons and ignoring relevant mitigating factors. In reviewing a challenge to the trial court's sentencing discretion, we are mindful that:

> [c]hallenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. Prior to reaching the merits of a discretionary sentencing issue[, w]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Manivannan***, 186 A.3d 472, 489 (Pa.Super. 2018) (quotation marks, some citations, and emphasis omitted).

Appellant filed a timely notice of appeal and a timely post-sentence motion. Appellant has included a Rule 2119(f) statement within his appellate brief. We proceed to review whether Appellant has raised a substantial question for our review. Rule 2119(f) requires the appellant to "set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." Pa.R.A.P. 2119(f). "[T]o establish a substantial question, the appellant must show actions by the trial court inconsistent with the Sentencing Code or contrary to the

fundamental norms underlying the sentencing process. The determination of whether a particular case raises a substantial question is to be evaluated on a case-by-case basis." *Commonwealth v. Bonner*, 135 A.3d 592, 603 (Pa.Super. 2016) (citations omitted).

This Court has held that "[a] claim that the trial court erred by imposing an aggravated range sentence without consideration of mitigating circumstances raises a substantial question." *Commonwealth v. Smith*, 206 A.3d 551, 567 (Pa.Super. 2019). Likewise, an allegation that the lower court failed to state adequate reasons on the record for imposing a sentence in the aggravated range raises a substantial question. *Commonwealth v. Wellor*, 731 A.2d 152, 155 (Pa.Super. 1999).

Our standard of review for a challenge to the discretionary aspects of sentence is well settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Reid*, 323 A.3d 26, 30–31 (Pa.Super. 2024) (quoting *Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa.Super. 2015) (citation omitted)).

The Sentencing Code requires a sentencing court to "follow the general principle that the sentence imposed should call for confinement that is

consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721. "The balancing of the sentencing factors is the sole province of the sentencing court." *Commonwealth v. Miller*, 275 A.3d 530, 535 (Pa.Super. 2022) (citation omitted).

When reviewing an aggravated range sentence, "the essential question is whether the sentence imposed is reasonable, considering the nature and circumstances of the offense, the history and characteristics of the defendant, the opportunity of the sentencing court to observe the defendant, including any presentence investigation, the findings upon which the sentence was based, and the sentencing guidelines." *Commonwealth v. Wallace*, 244 A.3d 1261, 1279 (Pa.Super. 2021) (quoting *Commonwealth v. Walls*, 592 Pa. 557, 926 A.2d 957, 965 (2007)); 42 Pa.C.S.A. § 9781. Although a trial court is required to consider the sentencing guidelines when imposing sentence,

> the sentencing guidelines are purely advisory in nature – they are not mandatory. A court may therefore use its discretion and sentence defendants outside the guidelines, as long as the sentence does not exceed the maximum sentence allowed by statute. When a court deviates from the sentencing guidelines, it must state the reasons for doing so on the record. This Court may vacate a sentence if it finds the "sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S.A. § 9781(c)(3).

*Commonwealth v. Velez*, 273 A.3d 6, 10 (Pa.Super. 2022) (some citations omitted). *See Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa.Super.

2010) ("Although Pennsylvania's system stands for individualized sentencing, the court is not required to impose the 'minimum possible' confinement").

We find no merit to either of Appellant's sentencing challenges. We reject Appellant's suggestion that the trial court completely ignored mitigating evidence as the trial court indicated that it had considered the Presentence Investigation (PSI) report prepared in advance of the sentencing hearing.

> "Where [PSI] reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers*, 519 Pa. 88, 101-102, 546 A.2d 12, 18 (1988).
>
> > A [PSI] report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that [sentencing courts] are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion.
>
> *Id.* at 102, 546 A.2d at 18. *See also Commonwealth v. Tirado*, 870 A.2d 362 (Pa.Super. 2005) (explaining if sentencing court has benefit of PSI, then law presumes court was aware of relevant information regarding appellant's character and mitigating factors).

*Commonwealth v. Watson*, 228 A.3d 928, 936 (Pa.Super. 2020).

Further, the trial court specifically set forth its reasons for imposing an aggravated range sentence on the record at the sentencing hearing:

> [T]his sentence is in the aggravated range due to the following [reasons]. One, any less of a sentence would depreciate the

seriousness of [Appellant's] actions. Two, [Appellant] has shown [] absolutely no remorse for his actions. Three, [Appellant] is not amenable to a county sentence and county parole supervision due to the fact that he absconded and was a fugitive from justice and was well aware that a warrant was issued for his arrest and failed to turn himself in but actually had to be arrested in the state of New Jersey and extradited to the Commonwealth of Pennsylvania.

N.T., 12/3/23, at 11-12.

Based on the foregoing reasons, we cannot find that the trial court abused its discretion in imposing Appellant's aggravated range sentence.

Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/25/2025